No. 20-3202

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

LATRINA COTHRON,
individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*

v.

WHITE CASTLE SYSTEM, INC.,
*Defendant-Appellant*

Appeal from the U.S. District Court
for the Northern District of Illinois, Case No. 19-cv-00382
Hon. John J. Tharp, Jr., Judge Presiding

# SUPPLEMENTAL APPENDIX OF
# DEFENDANT-APPELLANT WHITE CASTLE SYSTEM, INC.

Melissa A. Siebert
Erin Bolan Hines
William F. Northrip
SHOOK, HARDY & BACON LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

*Counsel for White Castle System, Inc.*

## APPENDIX TABLE OF CONTENTS

|  | **Pages** |
|---|---|
| Memorandum Opinion & Order dated August 7, 2020 (1:19-cv-00382, Dkt. 125) | A1–A15 |
| White Castle System Registration Screen (1:19-cv-00382, Dkt. 48-1) | A16 |
| White Castle Biometric Information Privacy Team Member Consent Form (1:19-cv-00382, Dkt. 48-2) | A17 |
| *Smith v. Top Die Casting Co.*, 2019-L-248 (Ill. Cir. Ct. Mar. 12, 2020) | A18–A21 |
| *Watson v. Legacy Healthcare Fin. Servs., LLC*, No. 2019-CH-03425 (Ill. Cir. Ct. June 10, 2020) | A22–A28 |
| *Robertson v. Hostmark Hospitality Grp., Inc.*, No. 2018-CH-05194 (Ill. Cir. Ct. May 29, 2020) | A29–A38 |

### SUPPLEMENTAL APPENDIX

| *Owens v. Wendy's Int'l, LLC*, No. 2018-CH-11423 (Ill. Cir. Ct. June 8, 2020) | A39–A64 |
|---|---|
| *Young v. Tri City Foods, Inc.*, No. 2018-CH-13114 (Ill. Cir. Ct. June 8, 2020) | A65–A90 |
| *Chavez v. Temperature Equip. Corp.*, No. 2019-CH-02538 (Ill. Cir. Ct. Sept. 11, 2019) | A91–A103 |

# APPENDIX

# A39–A103

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Martinique Owens and Amelia Garcia, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Wendy's International, LLC,<br><br>Defendant. | No. 18 CH 11423<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

MEMORANDUM OPINION & ORDER

This case, a proposed class action under the Biometric Information Privacy Act, presents a number of fundamental questions about the BIPA statute itself, its interaction with other legislative schemes, and the nature of a BIPA injury. These questions are raised by way of Motions to Dismiss, which the Court denies.

BIPA is not preempted by the Workers' Compensation Act. A BIPA injury is not the type of injury that is compensable under the Act. Because it is not compensable, the Act's exclusivity provision does not apply.

BIPA is subject to a five-year statute of limitations. The one-year statute of limitations only applies to privacy torts involving publications. Plaintiffs have made no such claim, and even if they did, BIPA does not require publication. The two-year statute of limitations applies to penal statutes. BIPA provides for statutory liquidated damages, but only as part of a broader remedial scheme that permits for actual damages. It is not penal, and the two-year statute does not apply either.

Because neither specialized statute of limitations applies, BIPA is subject to the five-year "catchall" statute of limitations. In light of this holding, the Court need not address when or how the various Plaintiffs' claims accrued, because under a five-year statute of limitations, all claims are timely.

The Motion to Dismiss is denied in its entirety.

## I. Background

This opinion discusses two cases: *Owens v. Wendy's*, 18 CH 11423, and *Young v. Tri City Foods*, 18 CH 13114. Each case is a BIPA class action brought by employees; though the parties are different, Plaintiff's counsel, Defendants' counsel, and even the third-party respondent in discovery are the same. Indeed, in almost every aspect relevant here, the cases are essentially the same.[1]

The cases have not been consolidated or transferred, and are not formally connected. Rather, they were both randomly assigned to the same calendar, and have been lockstepped since case management. The parties capitalized on this serendipity and have briefed and argued the (separate, but almost identical) Motions to Dismiss in parallel. The Court's ruling is the same in both cases, and so substantially similar orders will be entered in both.

With that having been said: each Complaint is pled as a putative class action, on behalf of all employees who used a biometric time clock during a particular timeframe. Because the Complaints are framed as such, each individual Plaintiffs' factual circumstance is less relevant—in a proper class, the named plaintiff(s) would largely be fungible, because the underlying legal issues would predominate.

Nevertheless, because no class has been certified, the Court takes a moment to describe the factual allegations each set of Plaintiffs make concerning their respective biometric events. The Court takes the allegations as true for the purposes of the present Motions to Dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (Ill. 1997).

### A. *Owens v. Wendy's*, 18 CH 11423

Wendy's is a well-known fast food restaurant chain. When employees first begin working for Wendy's, they are required to have their fingerprints scanned for an employee database. Employees then use fingerprints at their timeclocks to clock in and clock out of work. They also use fingerprints to unlock point-of-sale systems, including cash registers.

The Complaint alleges that Wendy's did not make any biometric disclosures to its employees, including why the information is collected, or to whom it might be disclosed. It also alleges that Wendy's did not provide written policies for retention or destruction of data, or offer guidelines for what happens to that data following an employee's separation.

The two named Plaintiffs, Owens and Garcia, each worked at a Wendy's in Illinois. Owens worked through July 2017; Garcia through July 2016.[2] Upon hiring, their fingerprints were collected; during their employment, they used fingerprint

---

[1] The sole exception is with respect to the effect of a two-year statute of limitations on claim accrual, discussed briefly in Part IV.E below. *See* Hrg. Tr. 32:19–33:15 (June 10, 2019).

[2] This Complaint does not provide specific dates when either Plaintiff began their employment. This particular information is not relevant to the disposition of the present Motion. *See* Part IV.E *infra* (accrual of claims moot).

scans to clock in and out and access POS systems. Neither was given biometric disclosures or written policies, and neither executed a release.

Plaintiffs filed suit on September 11, 2018. The Complaint alleges that Wendy's negligently failed to promulgate a retention policy under Section 15(a), or make necessary biometric disclosures under Section 15(b). 740 ILL. COMP. STAT. 14/15(a), (b). These claims cumulate in a single count for negligent violation of BIPA. *Id.* § 14/20(1). The Complaint's proposed class encompasses all Illinois residents whose fingerprints came into Wendy's' possession.

### B. *Young v. Tri City Foods*, 18 CH 13114

Tri City Foods is a franchisee for Burger King, another well-known fast food restaurant chain. The substantive allegations are familiar: when employees first begin working for Tri City Foods, their fingerprints are scanned for a database. Employees use fingerprints at their timeclocks to clock in and out of work. This Complaint alleges that Tri City Foods did not make any biometric disclosures, or provide a retention or destruction policy.

The named Plaintiff, Young, worked for Tri City Foods from July 2017 to January 2018. His fingerprints were collected at the beginning of his employment, and he used fingerprints to clock in and out of work. He was not given biometric disclosures or written policies, and did not execute a release.

Plaintiff filed suit on October 22, 2018. The Complaint alleges that Tri City Foods negligently failed to promulgate a retention policy under Section 15(a), and make disclosures under Section 15(b). 740 ILL. COMP. STAT. 14/15(a), (b). As before, it presents a single count for negligent violation of BIPA. *Id.* § 14/20(1). The Complaint's proposed class encompasses all Illinois residents whose biometric data[3] came into Tri City Foods' possession.[4]

### C. Procedural Developments

As noted above, though these twin cases were filed separately, they were both randomly assigned to the same calendar, and have proceeded in parallel since initial case management. Both were stayed for a time pending the Illinois Supreme Court's decision in *Rosenbach*, 2019 IL 123186. Once that ruling issued, parallel motions to dismiss were filed, briefed, and argued, with the Court taking the matters under advisement on June 10, 2019.

Since then, Plaintiffs have sought leave to supplement the records with additional authority in the form of recent trial court decisions on these issues in similar cases. After the third such motion, the Court advised the parties to refrain

---

[3] BIPA defines "biometric identifier" and "biometric information" separately. 740 ILL. COMP. STAT. 14/10. For ease of reference, and because the difference between the two is not relevant here, the Court refers to both of these terms collectively as "biometric data."

[4] Whereas the *Owens* class specifically refers to fingerprints, the *Young* complaint refers instead to "biometric identifiers or biometric information." It is unclear why the class is more broadly defined, given that *Young* only alleges collection of fingerprints. For ease of reference, the Court refers to the allegations across both cases as fingerprinting generally.

from bringing further ones. The Court is aware of its colleagues' decisions, and no citation is needed to consider such public records.[5]

These decisions are not, of course, binding in any way, nor were they offered as such. Nevertheless, in such a rapidly evolving area of the law as this, where binding authority on these questions does not yet exist, it is appropriate to consider nonbinding persuasive authority. *E.g.*, *Perik v. JPMorgan Chase Bank, N.A.*, 2015 IL App (1st) 132245, ¶25. Binding or not, "Nothing, however, bars a court from adopting sound reasoning." *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶27. The Court happens to agree with the majority of its colleagues, but as this opinion demonstrates, its reasons are its own.

Finally, in the *Young* case only, Defendant moved to amend the Motion to Dismiss—which by that point had been fully briefed, argued, taken under advisement, and thrice supplemented—by adding a constitutional challenge. The Court denied that request, without prejudice; these matters are complex enough as they stand.

## II. Legal Standards

Both Motions to Dismiss raise identical arguments by way of Section 2-619. Such motions require that the Court accept as true all well-pleaded facts and their attendant inferences. Specifically, Defendants raise arguments under Sections 2-619(a)(9) and (a)(5). 735 ILL. COMP. STAT. 5/2-619.

The Section 2-619(a)(9) arguments raised by Defendant seek a dismissal upon a showing of other affirmative matters, outside the four corners of the complaint, which defeat the claim in whole or in part. *Alford v. Shelton (In re Estate of Shelton)*, 2017 IL 121199, ¶21. Here, the affirmative matter is the exclusivity

---

[5] The Court is familiar with twenty-one written decisions from trial courts addressing the Workers' Compensation Act, BIPA's statute of limitations, or both, to wit:
*McDonald v. Symphony*, 17 CH 11311 (Cir. Ct. Cook Co., June 17, 2019) (Judge Mitchell) (*McDonald I*);
*Fluker v. Glanbia*, 17 CH 12993 (Cir. Ct. Cook Co., July 11, 2019) (Judge Mitchell);
*Robertson v. Hostmark*, 18 CH 5194 (Cir. Ct. Cook Co., July 31, 2019) (Judge Cohen) (*Robertson I*);
*Mims v. Freedman*, 18 CH 9806 (Cir. Ct. Cook Co., Aug. 22, 2019) (Judge Demacopoulos);
*Chavez v. Temperature Equipment*, 19 CH 2358 (Cir. Ct. Cook Co., Sept. 11, 2019) (Judge Jacobius);
*Tims v. Black Horse*, 19 CH 3522 (Cir. Ct. Cook Co., Sept. 23, 2019) (Judge Atkins) (*Tims I*);
*Roach v. Walmart*, 19 CH 1107 (Cir. Ct. Cook Co., Oct. 25, 2019) (Judge Meyerson);
*McDonald v. Symphony*, 17 CH 11311 (Cir. Ct. Cook Co., Oct. 29, 2019) (Judge Mitchell) (*McDonald II*);
*Carrasco v. Freudenberg*, 19 L 279 (Cir. Ct. Kane Co., Nov. 15, 2019) (Judge Pheanis);
*Cortez v. Headly*, 19 CH 4935 (Cir. Ct. Cook Co., Nov. 20, 2019) (Judge Demacopoulos);
*Woodard v. Dylan's Candybar*, 19 CH 5158 (Cir. Ct. Cook Co., Nov. 20, 2019) (Judge Demacopoulos);
*Figueroa v. Tony's Finer Foods*, 18 CH 15728 (Cir. Ct. Cook Co., Dec. 10, 2019) (Judge Moreland);
*Heard v. THC – North Shore*, 17 CH 16917 (Cir. Ct. Cook Co., Dec. 12, 2019) (Judge Valderrama);
*Treadwell v. Power*, 2019 U.S. Dist. LEXIS 215467 (N.D. Ill. Dec. 16, 2019);
*Marion v. Ring Container*, 19 L 89 (Cir. Ct. Kankakee Co., Jan. 24, 2020) (Judge Albrecht) (*Marion I*);
*Robertson v. Hostmark Hospitality*, 18 CH 5194 (Cir. Ct. Cook Co., Jan. 27, 2020) (Judge Cohen) (*Robertson II*);
*Tims v. Black Horse*, 19 CH 3522 (Cir. Ct. Cook Co., Feb. 26, 2020) (Judge Atkins) (*Tims II*);
*Smith v. Top Die*, 19 L 248 (Cir. Ct. Winnebago Co., Mar. 12, 2020) (Judge Honzel);
*Cortez v. Headly*, 19 CH 4935 (Cir. Ct. Cook Co., Mar. 13, 2020) (Judge Demacopoulos);*Marion v. Ring Container*, 19 L 89 (Cir. Ct. Kankakee Co., April 17, 2020) (Judge Albrecht) (*Marion II*); and
*Robertson v. Hostmark*, 18 CH 5194 (Cir. Ct. Cook Co., May 29, 2020) (Judge Cohen) (*Robertson III*).

provision of the Workers' Compensation Act. 820 ILL. COMP. STAT. 305/5(a), 305/11. Exclusivity is properly raised by way of Section 2-619(a)(9). *See Folta v. Ferro Engineering*, 2015 IL 118070, ¶¶7, 10.

The Section 2-619(a)(5) arguments assert that the claims are barred by the applicable statute of limitations. Here, BIPA does not identify a limitations period. Defendants argue the one-year privacy statute of limitations applies, 735 ILL. COMP. STAT. 5/13-201, and in the alternative that the two-year statute for penalties or personal injury claims applies, *id.* 5/13-202. Plaintiffs propose the five-year catchall statute applies. *Id.* 5/13-205. Determining whether the claims are timely requires identifying which statute of limitations applies, which is properly done on a Section 2-619(a)(5) motion. *See O'Toole v. Chi. Zoological Soc'y*, 2015 IL 118254, ¶16.

## III. Workers' Compensation Act

The Workers' Compensation Act establishes a comprehensive regime for workplace injuries, providing exclusive relief and precluding all other causes of action. The Act's exclusivity provision has four judicially recognized exceptions. Two of those are relevant here: whether the injury was not accidental, and whether it is compensable under the Act. If either exception is met, the Act's exclusivity provisions do not apply, and the cause of action is permitted.

The Court declines to rule on the first exception concerning the (non)accidental nature of the alleged BIPA violations, because the ramifications of such a ruling extend beyond the questions presented. The Court holds, however, that BIPA injuries lie categorically outside the scope of the Act, and are not compensable. The Act's exclusivity provisions therefore do not apply to bar the cause of action.

### A. Statutory Scheme

The Illinois Workers' Compensation Act is often described as a grand bargain between employees and employers.[6] Employees benefit from no-fault liability, which offers an easier path to recovery for workplace injuries. Employers accept this liability in exchange for protection from common-law suits and overly large verdicts. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (Ill. 1990).

Crucial to this scheme is the exclusivity provision of the Act. Section 5(a) provides that "no common law or statutory right to recover damages from the employer . . . is available to any employee who is covered by the provisions of this Act." 820 ILL. COMP. STAT. 305/5(a). Section 11, in turn, provides limitations on the measure of responsibility attributable to an employer—i.e. their liability exposure. *Id.* 305/11.

---

[6] Though, curiously, the phrase "grand bargain" itself does not appear in Illinois caselaw at all, and only sporadically elsewhere. *See* Emily A. Spieler, *(Re)assessing the Grand Bargain: Compensation for Work Injuries in the United States, 1900–2017*, 69 RUTGERS L. REV. 891, 893 n.4 (2017) (history of phrase).

The practical import of the exclusivity provision is that employees cannot bring common-law suits against an employer unless one of four exceptions is met, which requires the employee to prove:

(1) that the injury was not accidental;
(2) that the injury did not arise from his or her employment;
(3) that the injury was not received during the course of employment; or
(4) that the injury was not compensable under the Act.

*Meerbrey*, 139 Ill. 2d at 463 (citing *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (Ill. 1980) (formatted for clarity). Unless an exception is met, the claim will fall within the exclusive scope of the Act. In that case, a Section 2-619 dismissal is proper, and the employee must turn to the Workers' Compensation Commission as the proper adjudicating authority.

Here, the parties agree that the second and third exceptions are not at issue: the fingerprinting arose from the employment, and the alleged BIPA violations were received in the course of employment.[7] At issue are the first and fourth exceptions: whether the injury was accidental, and whether it is compensable. If either exception is met, the claim may proceed.

## B. Accidental Injury

Defendants argue that, while Plaintiffs allege a negligent violation of BIPA, the first exception requires the injury be *not accidental*, and it is inconsistent to argue a claim is both not an accident and negligent. The analysis is more complex than Defendants' position suggests, and hinges on the implications of what Plaintiffs have pled and the mechanics of their claim.

It is possible for a claim of negligence to include sufficient allegations as to specific intent to meet this exception. But the question of whether that can be done in a BIPA case has ramifications well beyond the scope of the issue at hand. The Court declines to rule on the issue at this time.

### 1. "Accidental"

In the realm of workers' compensation, "accidental" is not a specifically defined term of art. Rather, it refers to "anything that happens without design or an event which is unforeseen by the person to whom it happens." *Meerbrey*, 139 Ill. 2d at 463 (quoting *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (Ill. 1976)). Some cases are self-evident: if the employer directs, encourages, or commits an intentional tort, the exception is met. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 239 (Ill. 1980). Negligence, however, is more difficult.

---

[7] Other courts have held that, where fingerprinting is made a condition of employment, the BIPA violation manifests *prior* to the term of employment. This implicates, among others, the applicability of the third exception. *See Mims*, *supra* note 5, at pp. 5–6; *Woodard*, *supra* note 5, at p 9. Neither case here presents this theory, but it is worth noting.

Not all negligence cases are barred. *Schusse v. Pace Suburban Bus Div. of the Reg'l Transp. Auth.*, 334 Ill. App. 3d 960, 965 (1st Dist. 2002) (blanket preemption of negligence cases "would be contrary to *Meerbrey*."). But negligence cases do pose a grey area.

The First District recently examined the intersection of negligence and accident in *Garland v. Morgan Stanley*, which concerned a deadly crash of a small aircraft engaged by Morgan Stanley for a business trip. 2013 IL App (1st) 112121, ¶¶5–6. The *Garland* court did not hold that claims of negligence were necessarily accidental within the meaning of the first exception to the Act. It did, however, discuss the relevant standards. *Id.* at ¶¶29–30. The court held "the employee must establish that his employer or co-employee acted deliberately and with specific intent to injure the employee." *Id.* at ¶29 (citing *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 214 (4th Dist. 1991)). Without that specific intent, even conduct "beyond aggravated negligence" was insufficient. *Garland*, 2013 IL App (1st) 112121, ¶29 (quoting *Copass*, 211 Ill. App. 3d at 214).

Ultimately, the *Garland* plaintiff proposed a grave negligence claim, containing everything leading up to, but not including, the particular allegation that the employer specifically intended the injury. *Garland*, 2013 IL App (1st) 112121, ¶¶16, 30. The *Garland* court rejected the claim, holding the employer's intention was the essential ingredient: "the employee must show that the employer specifically intended to injure the plaintiff." *Id.* at ¶30 (collecting citations).

Here, and on the face of the pleading, Plaintiffs have an uphill battle, as their claims sound in negligence only.

## 2. The *Treadwell* Analysis

As of this writing, the Court knows of only one case that has discussed the accident prong within the context of BIPA: *Treadwell v. Power Solutions*, a Northern District case. 2019 U.S. Dist. LEXIS 215467 (N.D. Ill., Dec. 16, 2019).[8] There, the defendant protested there were no specific allegations of specific intent, and without them, the claim could not be accidental. *Id.* at *9. Specifically, the defendant charged that plaintiff had alleged a "series of omissions," rather than any affirmative intent. *Id.*

The court disagreed: the plaintiff alleged the defendant's intent to collect fingerprints; the BIPA violation occurred at the time of collection, without more; and—crucially— defendant was presumed to know the law. *Id.* at **9–10 (citations omitted). The specific allegation that the employer intended to collect fingerprints, coupled with the fact that the employer was presumed to know the action, by itself,

---

[8] One other case, *Marion v. Ring Container*, touches on the accident prong, holding flatly that the defendant there "has not established that the injuries alleged are . . . accidental . . . . Violation of [BIPA] requires a deliberate act[.]" 19 L 89, at p.2 (Cir. Ct. Kankakee Co., Jan. 24, 2020). Without access to the pleadings, it is unclear whether *Marion* concerned a *negligent* BIPA violation; without that information, its conclusion is not overly useful. *Treadwell* doesn't specify whether the allegations there pointed to negligence, but its discussion is substantially longer, and provides a more useful point of reference.

would be a violation, meant the allegation of specific intent to collect necessarily included an inferred allegation of specific intent to violate BIPA.

Plaintiffs' briefing predates *Treadwell* but tracks this logic. They argue the decision to require employees to use biometric timeclocks was intentional, and the decision was a result of the purposeful "design" of the employer. This tracks part of the *Meerbrey* definition of "accidental" as "anything that happens without design." *Meerbrey*, 139 Ill. 2d at 463.

But it also fits in with the *Treadwell* analysis. Everyone is presumed to know the law. *Jones v. Bd. of Educ.*, 2013 IL App (1st) 122437, ¶22. This naturally applies to BIPA, even though it lay dormant until recently. If the system will violate BIPA, and Plaintiffs allege the system was intentionally implemented, then that underlying allegation necessarily entails the further allegation that Defendants intended to cause BIPA violations to occur. And *that* is an allegation of intentionality sufficient to trigger the first exception, as the claim would no longer be accidental.

### 3. Intentionality and BIPA

This is a logical, appealing analysis. And yet the Court hesitates to adopt it, not because it leads to an incorrect conclusion here, but because of its potential ramifications. This *Treadwell* logic applies to the employer's intent *generally*, which interacts with other parts of the case—specifically, the nature of the BIPA claim itself.[9] If installing a timeclock alone is enough to intend to violate BIPA, then any claim for a negligent violation under Section 20(1) would *necessarily* evolve into a claim for an intentional violation under Section 20(2)—for, after all, the installation was intentional, and would be enough to intend the violation itself. 740 ILL. COMP. STAT. 14/20.

It is easy to imagine a negligent violation of BIPA: a supervisor forgets to close out of a secure system, allowing a mustachioed tortfeasor to pilfer the files, using them to commit identity theft. But it is difficult to see how the *Treadwell* analysis permits negligent BIPA claims in the employment context. Perhaps all employment claims are necessarily intentional. Perhaps not. But that investigation ranges well beyond the questions presented in this case, into what exactly the state of mind requirements for BIPA are.

The Court need not resolve these questions. Because the fourth exception is met, the claims survive, and the Court will decline to rule as to the first exception. The nature of negligence may return, but not at this time.

### C. Compensability

The Workers' Compensation Act only precludes causes of action that are compensable under the Act. The relevant standard of law here is thinly developed, but this fourth exception requires analyzing the nature of the injury itself to

---

[9] By comparison, the Court's conclusion in Part III.C *infra* that BIPA claims are not compensable under the Act only applies to the Workers' Compensation Act, and does not "feed back," so to speak, into the claim itself.

determine whether it categorically fits within the Act's scope. BIPA injury is fundamentally different from every other type of injury covered by the Act. Because BIPA categorically does *not* fit under the Act, the fourth exception is met, and the Act does not bar the claim.

### 1. Identity of Tests

The fourth exception to the Workers' Compensation Act's preclusion regime requires "that the injury was not compensable under the Act." *Meerbrey*, 139 Ill. 2d at 463. Defendants argue an injury is compensable, and thus the exclusivity provision applies, when the injury arises out of the employment, and is incurred in the course of employment. These are, of course, the second and third exceptions. Defendants' position entails that, where the second and third exceptions are not met, the fourth can never be met.

For this proposition, Defendants point to *Sjostrom*, a 1965 case which provides that an injury is compensable if suffered in the line of duty; the "line of duty" test is identical to the "compensability" test; and both are satisfied by a showing that the injury arose "out of and in the course of employment." 33 Ill. 2d 40, 43 (Ill. 1965).[10]

Defendants insist this limited test is still controlling law. They point to a recent case centered on the compensability language: *Folta.* There, on its initial appeal, the defendant proposed to define "compensability" in the same way Defendants do here: "an injury is not compensable only if it does not arise out of and in the course of employment." *Folta v. Ferro Engineering*, 2014 IL App (1st) 123219, ¶29. The First District rejected the definition, holding that to define the fourth exception by reference to the second and third would render that fourth exception "superfluous." *Id.* ¶30. But the Supreme Court reversed, with an extended discussion of compensability that cited, among others, *Sjostrom.* 2015 IL 118070, ¶18.

Defendants conclude this means the First District's ruling is irrelevant, *Sjostrom* is good law, and compensability is essentially a restatement of the second and third exceptions. And because Plaintiffs here conceded the second and third exceptions are not met, Defendants conclude the fourth cannot be, either. But Defendants misconstrue the import of *Folta*, both in terms of what it says and what it means.

### i. Scope of Reversal

On a purely technically level, though the Supreme Court reversed the First District's ruling, it did not address the First District's conclusion that the fourth exception had to be something more than a restatement of the second and third exceptions. Indeed, the Supreme Court remarked that the plaintiff there conceded

---

[10] As noted above, other courts have held that, where fingerprinting is made a condition of employment, it necessarily falls outside of the line of duty. *Supra* note 7. Such a holding would terminate the analysis here, in Plaintiffs' favor. Again, because neither party has raised the issue, the Court declines to address it further.

the injury "was accidental and arose out of and during the course of his employment." *Folta*, 2015 IL 118070, ¶16. If the Court agreed with the defendant there—and Defendants here—that meeting the second and third exceptions was sufficient, then that statement *alone* would be enough to end the case.

Not only does the Court *not* end there, but it uses that proposition to springboard into the meat of its opinion: a lengthy discussion of whether and how recoverability plays into compensability, the main issue upon which the Court reversed. *See id.* at ¶¶25–43. With respect to the First District's characterization of the fourth exception, the Supreme Court's reversal was on other grounds.

### ii. A Broader Analysis

More generally, Defendants' reading is too simplistic. We know this because the Supreme Court tells us so in *Folta* itself. The paragraph discussing *Sjostrom* is part of a broader discussion of the Court's compensability caselaw. Indeed, the very next paragraph notes, with respect to *Sjostrom* and similar cases, "Although this court equated 'compensable' with 'line of duty,' the sole question raised in those cases was whether the plaintiff's injuries arose out of or in the course of his employment." After acknowledging the contextual limitations of the *Sjostrom* analysis, the *Folta* court describes how "In another line of cases we further refined our inquiry as to what is meant by compensable by considering whether an employee was covered under the Act where the essence of the harm was a psychological disability, and not a traditional physical injury." *Id.*

These cases consider compensability by looking to the nature of the injury itself. *Pathfinder* was the first, holding psychological injury compensable under the Act. *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (Ill. 1976). Its progeny—unquestionably still good law—lead to the classification of "physical-mental" injury, which Plaintiff discusses by way of analogy slightly later on. *See Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶30 (collecting cases and discussing compensability of "physical-mental" injuries).

That entire branch of the caselaw flows from an analysis of the fourth "compensability" exception as requiring something additional: an investigation of the nature of the injury. If the fourth exception was simply a regurgitation of the second and third, then the nature of the injury would be irrelevant, and nearly fifty years of caselaw would be fatally undercut.

Finally, we know Defendants' read of *Folta* is incorrect because the case says so. After recapping its entire compensability caselaw, the *Folta* court concludes "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." 2015 IL 118070, ¶23. The Court goes on to discuss how recoverability fits in, but it conspicuously omits further discussion of the second or third exceptions. There may be quite a bit of overlap in the scope of the second, third, and fourth exceptions, but it is undeniably clear that, in the Supreme Court's view, compensability requires a separate analysis, one which this Court must now undertake.

## 2. A Note on Statutory Construction

Both parties spill some ink discussing principles of statutory construction, including whether and how one or the other statutes takes priority by virtue of being older, more specific, and so forth. Defendants propose that the Workers' Compensation Act trumps BIPA, and the exclusivity provision applies; Plaintiffs, unsurprisingly, propose the opposite.

Neither analysis is relevant here. Where the plain language of the statute admits of only one interpretation, it is dispositive of the inquiry. *Hadley v. Ill. Dep't of Corr.*, 224 Ill. 2d 365, 371 (Ill. 2007). Unambiguous statutes must be applied as written, without reference to the tools of statutory construction. *Id.*; *Taylor v. Pekin Ins. Co.*, 231 Ill. 2d 390, 395 (Ill. 2008). Those tools only come into play when there is an ambiguous statute to be constructed. And here, the conflict between the Workers' Compensation Act and BIPA does not arise from what either of them say: there is no ambiguity, and the plain language is largely irrelevant.

The Act does not preempt specific causes of action—nor could it, as it is designed to provide a general statutory scheme that precludes whole swathes of litigation. It is explicitly designed to provide a general rule that may indeed prevail over specific statutory causes of action.

BIPA, in turn, does not say anything about the Act. We know it applies in the employment context, because it notes how releases can be conditions of employment. 740 ILL. COMP. STAT. 14/15. But BIPA says nothing about the extent of its application in the employment context; as Defendants note, even if the Act barred a BIPA claim at law, it would still permit an employee to seek an injunction. *Id.* 14/20(4). BIPA *could* have been excluded from the Act's scope, *see* 410 ILL. COMP. STAT. 305/14 (AIDS Confidentiality Act's non-preemption provision), but the absence of such a provision does not mean that it is automatically preempted.

Statutory construction is simply a poor tool for this analysis. Each statute says what it says, plainly and unambiguously. The question for the Court's consideration cannot be answered by teasing out meaning from the language of the statutes, because neither addresses this type of interaction. Rather, the Court must examine the nature of the underlying cause of action—BIPA—through the rules governing the broader statutory scheme—the Act. It must, in other words, look beyond the language of either statute.

## 3. Nature of the Injury

Whether an injury is compensable depends on whether the type of injury "categorically fits within the purview of the Act." *Folta*, 2015 IL 118070, ¶23. Relevantly, "The purpose of the Act is to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." *Mytnik v. Ill. Workers' Comp. Comm'n*, 2016 IL App (1st) 152116WC, ¶36 (citing *Orsini v. Industrial Com.*, 117 Ill. 2d 38, 44 (Ill. 1987)).

The problem can be approached first by looking to what the Act covers, and second to what, exactly, a BIPA violation is. Both analyses reach the same conclusion: a BIPA injury is not compensable within the meaning of the Act.

### i. Compensable Cases

Defendants are correct that the Act itself does not include a physical injury requirement. Half a century of cases have used various terms for it, but in sum, every type of injury held compensable under the Act includes some nexus to physical injury as a requirement of compensability.

The prototypical incident of workers' compensation is physical injury. This covers everything from discrete bodily injury, *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407, 409 (Ill. 1956), to repetitive stress from picking up items, *Mytnik*, 2016 IL App (1st) 152116WC, to an aircraft crash on a business trip, *Garland*, 2013 IL App (1st) 112121. Pure physical injury is largely self-explanatory, and not otherwise relevant in this case.

The Act's preclusion regime also extends somewhat beyond the employee in question. The exclusivity provisions will bar third-party claims against the employer that arise out of a workplace injury, such as loss of consortium by a spouse. *Bloemer v. Square D Co.*, 8 Ill. App. 3d 371, 373 (1st Dist. 1972). This is because the Act is designed to substitute for remedies "directly or indirectly resulting from injury to an employee," which includes certain derivative-type claims in its overall scheme. *Dobrydnia v. Indiana Group, Inc.*, 209 Ill. App. 3d 1038, 1042 (3d Dist. 1991).

Courts have also held psychological injuries are compensable, including the emotional shock of witnessing another's injury, even though the shock does not cause physical injury, *Pathfinder*, 62 Ill. 2d at 563; emotional distress caused by failure to render aid during a heart attack, *Collier*, 81 Ill. 2d at 237; and emotional distress caused by overworking in an environment of harassment, *Schroeder*, 2013 IL App (1st) 122483, ¶30.

Defendants attempt to circumvent this thread by citing to *Richardson*, which pronounces "the fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act." *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 548 (1st Dist. 1993). The citation is misplaced; the very next line cites *Pathfinder*, which held emotional shock compensable. *Id.* In this context, it is clear *Richardson* simply means that no bodily physical harm occurred, as opposed to mental harm. Indeed, *Richardson* concludes that the injury there—claimed civil rights violations, among others—stemmed from an argument at work about the employee's duties. That mental harm was sufficiently close to the employment to be compensable under the Act. *Id.* at 59.

*Richardson* is easily explained by later cases, which offer a retrospective gloss on the importance of *Pathfinder*. Psychological injury may be compensable under the Act, and comes in two types: "physical-mental," where a physical event causes mental injury; and "mental-mental," where a specific event causes mental, but not physical, injury. *City of Springfield v. Industrial Comm'n (B.K.)*, 291 Ill. App. 3d 734, 738 (4th Dist. 1997). *Pathfinder* held that "mental-mental" claims could be compensable, even without minor or ephemeral physical injury. *Id.* (discussing *Pathfinder*, 62 Ill. 2d at 564.

In all instances, and regardless of whether a claimant suffers gross bodily harm or psychological damages, which can include a physical or mental manifestation, there is always a physical component involved, even if indirectly. Thus, it can be said that, compensability is tied to the presence of "demonstrable medical evidence of injury." *Toothman v. Hardee's Food Sys.*, 304 Ill. App. 3d 521, 533 (5th Dist. 1999).

None of the types of cases, fact patterns, or causes of action held compensable under the Act include the sort of injury that BIPA presents. The Court does not consider this issue to be covered in any meaningful sense by appellate precedent. Indeed, the fact that nothing like a BIPA injury has previously been held compensable is a strong indication that it is not compensable.

### ii. The Nature of a BIPA Injury

From the other side of the inquiry, the Court can examine what a BIPA violation is. BIPA itself is a codification of an individual's "right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶33. It is, as the First District recently put, "a privacy rights law that applies inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶30.[11]

The Court discusses the precise nature of a BIPA violation with respect to its privacy implications below. *See* Part IV.B *infra* (1-year statute of limitations). Without engaging in that analysis just yet, the broad strokes of the statute make clear enough that BIPA remedies a type of injury fundamentally different from anything within the Workers' Compensation Act's scope.

BIPA is a unique statute with a unique concern: biometric data. Biometrics are unique and immutable identifiers, and the ramifications of their use are not fully known. *See, e.g.*, 740 ILL. COMP. STAT. 14/5 (legislative findings). BIPA does not constrain the use of biometrics; as Defendants point out, their biometric timeclocks are perfectly legal, and such systems undoubtedly provide concrete benefits to both employer and employee in terms of ease of use, accuracy, and so forth. BIPA does not concern itself with these uses—at least, not directly.

Instead, BIPA protects biometrics by requiring the disclosure of certain types of information, creating a statutory regime under which individuals know, at all times, who has their biometric data, how it is stored, and what will happen to it once the individual's relationship with the collecting entity comes to an end. 740 ILL. COMP. STAT. 14/15. This scheme only functions if it applies to all biometric-collecting entities; because biometrics are unique, one collection exception is one exception too many. And by giving individuals information about how their data is collected, it permits them to make informed decisions about their biometrics. *See* Matthew B. Kugler, *From Identification to Identity Theft: Public Perceptions of*

---

[11] This language does not necessarily mean that the Workers' Compensation Act's exclusivity provision does not apply. As Defendants astutely point out, BIPA permits injunctive relief. 740 ILL. COMP. STAT. 14/20(4). Even if the Act barred damages claims, employees could still sue for purely injunctive relief.

*Biometric Privacy Harms*, 10 U.C. IRVINE L. REV. 107, 130–35 (2019) (lengthy discussion of legislative history and purpose of BIPA).

BIPA is not, in other words, aimed at employers in any meaningful way. It applies to payment systems, *see id.* at 130 (discussing Pay By Touch bankruptcy), amusement parks, *see Rosenbach*, 2019 IL 123186, ¶4, and employers equally. It applies both before and after the employment relationship: before, because it can be a condition of employment, which the potential employee can choose to accept or reject, *see* 740 ILL. COMP. STAT. 14/10; and after, because its data destruction requirements can trail for up to three years, *id.* 14/15(a).

BIPA creates a statutory cause of action to vindicate its protections. A violation of those protections alone, without actual damages, much less physical ones, creates a "real and significant" injury. *Rosenbach*, 2019 IL 123186, ¶34. The fact that the injury is complete *without* actual damages is a stark divergence from normal workers' compensation claims, which by definition seek compensation.[12] A BIPA injury is solely a legal injury, without any physical component.[13]

To the extent employers run afoul of BIPA's requirements, the alleged violations are not intrinsically connected to the employment by anything more than chance. Use of biometrics in timeclocks does not convert a BIPA claim to a wage or hours claim. *Liu*, 2019 IL App (1st) 182645, ¶30. Likewise, use of biometrics in the workplace does not convert a BIPA claim to anything reasonably within the scope of workers' compensation, much less categorically so as the caselaw demands.[14]

BIPA is thus similar to a spoliation claim: spoliation claims are not compensable under the Act even if the underlying injury triggering the spoliated litigation *was* covered by the Act. *Schusse*, 334 Ill. App. 3d at 969 (reviewing caselaw).

Because BIPA injuries do not categorically fit within the purview of the Workers' Compensation Act, they are not compensable under the Act. Because BIPA injuries are not compensable under the Act, the fourth exception to the exclusivity provision is satisfied, and the Act will not bar the claim.

---

[12] At least one court has founded its ruling on this distinction alone. *Carrasco*, *supra* note 5, at p.2.
[13] The fact that the injury accrues by way of an employee touching a timeclock is both *de minimis* and irrelevant. Biometrics can be collected remotely, as exemplified by facial recognition technology. *See, e.g., Patel v. Facebook, Inc.*, 932 F.3d 1264, (9th Cir. 2019) (facial recognition class settlement).
[14] Plaintiffs point to a number of foreign cases holding that similar privacy and statutory regulation schemes are not preempted by other workers' compensation acts. *See, e.g., Marino v. Arandell Corp.*, 1 F. Supp. 2d 947, 949–50 (E.D. Wis. 1998) (privacy statute); *Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 325 (Ala. 1989) (invasion of privacy); *Vainio v. Brookshire*, 258 Mont. 273, 280 (Mont. 1993) (emotional pain and suffering). None of these are particularly good comparators, as each state's workers' compensation exclusivity provision is drafted slightly differently. Yet it is worth noting that no one else considers this type of injury compensable, as further evidence of its categorical exclusion from the realm of workers' compensation generally.

## IV. Statute of Limitations

There are two potentially applicable statutes of limitation: Section 13-201, which provides a one-year period for privacy claims involving publication, and Section 13-202, which applies a two-year period to penal statutes and personal injury claims. BIPA protects privacy by controlling information, and it is the unique nature of that control which gives rise to its unique claims and cause of action.

Section 13-201 does not apply, because none of the claims actually pled involve publication. Furthermore, even if they somehow did, the Court is unconvinced that the "dissemination" language of BIPA is sufficient to constitute "publication" within the meaning of Section 13-201.

Section 13-202 does not apply because BIPA is remedial, not penal. The Supreme Court has laid out a clear test, which the statute does not pass. Furthermore, recent caselaw on the Telephone Consumer Protection Act provides a useful analogy. Finally, BIPA certainly does not present a personal injury.

Because the five-year statute of limitations applies, questions concerning claim accrual are moot, and the Court declines to address them.

### A. Selecting a Statute

BIPA does not contain a statute of limitations. Where a cause of action does not identify a limitations period, it must be determined as a matter of law. *Travelers Cas. & Sur. Co. v. Bowman*, 229 Ill. 2d 461, 466 (Ill. 2008). Section 13-205 provides the default rule: "all civil actions not otherwise provided for" are subject to a five-year statute of limitations. 735 ILL. COMP. STAT. 5/13-205. The question then becomes whether another limitations period applies.

Where multiple statutes of limitation apply, the correct statute is determined by—once more—the nature of the injury. *Id.* at 466–67 (quoting, among others, *Armstrong v. Guigler*, 174 Ill. 2d 281, 286–87 (Ill. 1996)). Specifically, this inquiry looks to the legal injury itself, rather than the facts from which it sprung, *id.* at 466 (citing *Armstrong*, 174 Ill. 2d at 286–87), and to the liability imposed, rather than the relief sought, *id.* at 467 (citing *Armstrong*, 174 Ill. 2d at 291). If multiple statues should apply, the more specific statute takes precedence. *Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill. 2d 190, 196 (Ill. 1992) (citations omitted).

The Court notes that this is an inquiry of law, not of public policy. *See Bowman*, 229 Ill. 2d at 466–467. Defendants do not explicitly make a policy argument, but they do discuss the policy ramifications of the various competing options.[15] The correct statute of limitations—and, perhaps more specifically, the determination of when each claim accrued, and whether the alleged injuries are singular, serial, or continuous—has a tremendous impact on Defendants' liability.

---

[15] In this respect, they differ from the defendants in *Robertson v. Hostmark*, who explicitly urged application of the shortest possible limitations period on policy grounds. *Robertson I*, *supra* note 5, at pp. 3–4. Their argument was soundly rejected, and in the dozen written opinions addressing the issue since, the Court found no indication that any other defendants tried to renew it.

The questions of policy and damages Defendants raise are extremely important ones, but they are questions for another day. The issue before the Court is one of the statute of limitations, not of what may come next.

## B. Section 13-201: Privacy Claims

The first of two alternative statutes of limitation is Section 13-201:

> Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

735 ILL. COMP. STAT. 5/13-201. Defendants offer substantially more specificity in their argument, but the core premise is straightforward: BIPA is primarily concerned with privacy, and so the statute of limitations for privacy claims should apply. Privacy is, after all, in the name. *See, e.g., Rosenbach*, 2019 IL 123186, ¶34 (discussing BIPA's role in protecting privacy rights).

The inquiry here must be specific, because it looks to the nature of the legal injury itself, and the basis for liability. BIPA provides a single cause of action in Section 20, which provides that a party may recover for negligent violations, intentional or reckless violations, fees and costs, and injunctive relief. 740 ILL. COMP. STAT. 14/20(1)–(4). Underlying this single cause of action, BIPA provides five separate proscriptions in Section 15: five discrete violations which each give rise to liability. *Id.* § 14/15(a)–(e).

Each of these violations is a separate injury, and the Court finds it beneficial to analyze each separately. Crucially, Section 13-201 does not apply to privacy claims generally. Rather, it applies to privacy actions involving *publication*. Because none of the pled claims involve publication, Section 13-201 does not apply.

## 1. Section 15(a) Written Policy Claims

Section 15(a) requires an entity subject to BIPA to develop and publicly promulgate a written policy establishing a retention schedule and destruction policy for all collected biometric data. 740 ILL. COMP. STAT. 14/15(a). It requires that biometric data be destroyed within the earlier of 3 years of the entity's last interaction with the individual from whom information was collected, or when the purpose for collection of such information is satisfied.

The plain language of Section 13-201 is clear and unambiguous: it only governs (a) slander, (b) libel, or (c) "publication of matter violating the right of privacy." 735 ILL. COMP. STAT. 5/13-201. BIPA does not present either a slander or libel claim. The only way Section 13-201 could apply to a Section 15(a) claim, then, is under that third category.

Courts have interpreted Section 13-201's third class of torts to mean that the statute only applies to "privacy torts involving publication." *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (2d Dist. 1999). *See id.* at 1035 (plain

Page **16** of **26**

language of statute controls, and where tort was neither enumerated by 13-201 nor involved publication, 13-201 did not apply).

Publication is not an element of a Section 15(a) claim. Indeed, it is hard to see how it could be. Section 15(a) requires that entities develop a biometrics policy "made available to the public." 740 ILL. COMP. STAT. 14/15(a). It says nothing about individuals, much less private information. Section 13-201 cannot apply.

### 2. Section 15(b) Disclosure Claims

Section 15(b) requires an entity to take three actions prior to collecting biometric data: (1) disclose that biometrics are being collected, (2) disclose the purpose of the collection and duration of retention, and (3) obtain a written release for such collection. 740 ILL. COMP. STAT. 14/15(b).

Publication is not an element of a Section 15(b) claim. And, as with Section 15(a) claims, it is hard to see how publication would fit in here, either. The allegations are that Defendants use biometric timekeeping systems for every employee, and BIPA permits them to condition employment on executing a written release. 740 ILL. COMP. STAT. 14/20. This entails that all employees either did, or did not, receive BIPA disclosures or execute BIPA waivers. Thus, the fact that any given employee received a disclosure or executed a waiver would be no more private than the fact of their employment in the first place. Once again, Section 13-201 cannot apply.

### 3. Section 15(d) Dissemination Claims

Section 15(d) provides that no entity in possession of biometrics may "disclose, redisclose, or otherwise disseminate" those biometrics unless one of four exceptions applies, under which the disclosure is (1) consented to, (2) necessary to complete a financial transaction, (3) required by law, or (4) pursuant to warrant or subpoena. 740 ILL. COMP. STAT. 14/15(d).[16]

The bulk of Defendants' argument on Section 13-201 focuses on the ramifications of Section 15(d)'s disclosure language, and whether dissemination of biometrics would cause the tort to fall within the scope of Section 13-201's "publication" language.[17]

These arguments are particularly curious because Plaintiffs do not raise a Section 15(d) claim. Both Complaints acknowledge the possibility that further dissemination may have occurred, and both Complaints name NCR Corporation as a respondent in discovery, in the belief that NCR may possess information to identify additional entities that may have possessed biometric data. The class definitions are broad enough to encompass any claim under Section 15, if one were

---

[16] Section 15(c) prohibits profiting by way of biometrics, and is not implicated here, or otherwise suggested by the employment context. 740 ILL. COMP. STAT. 14/15(c). Section 15(e) requires that the information be stored securely. *Id.* § 14/15(e).

[17] The Court uses "dissemination" as shorthand to indicate disclosure, redisclosure, or dissemination within the meaning of Section 15(d). These are three different terms, but for the present discussion, the differences are irrelevant.

made. But nowhere do the Complaints allege that Defendants disseminated biometrics.[18] At the risk of stating the obvious, Section 13-201 does not apply to a claim unpled.

### 4. Section 15(d)'s Implications

Defendants attempt to salvage their core publication argument by making it anyway, arguing that the Section 15(d) analysis controls, regardless of whether a claim is explicitly made or not. The Court is not convinced. First, Defendants' statutory interpretation would wag the dog by the tail, and is not particularly logical. Second, even if Section 15(d) were dispositive, "dissemination" under BIPA does not equate to "publication" so as to bring any BIPA claim within the scope of Section 13-201.

### i. Connecting the Sections

Defendants argue that Sections 15(b) and 15(d) are "on equal footing." They point out that *Rosenbach* characterizes a Section 15(b) violation as a real and significant injury. 2019 IL 123186, ¶34. And, BIPA itself connects all four types of Section 15 violation to the same statutory damages. 740 ILL. COMP. STAT. 14/20(1). Defendants charge that, when *Rosenbach* made the sections "functionally equivalent," the Supreme Court necessarily entailed that all four be lockstepped to Section 13-201's one-year limitations period.

Bluntly, *Rosenbach* said no such thing. It held the Section 15(b) injury real and significant, because of its privacy implications. The only claim on the table in *Rosenbach* was a Section 15(b) claim. 2019 IL 123186, ¶11. Unsurprisingly, it did not discuss Section 15(d), much less equivocate it to anything. Its discussion of the privacy implications of a Section 15(b) claim do not change the fact that Section 13-201 is still contingent on publication—privacy alone is insufficient.

Furthermore, Defendants' own argument is self-defeating. Even if Sections 15(b) and 15(d) were "functionally equivalent"—an interpretation contrary to the plain language of the statute—there is no logical reason why that would entail lockstepping them both to the shorter statute of limitations. Certainly the Court can see none, and Defendants have neither tried to explain nor cited authority in support of their suppositions.

Defendants' attempt to read an illogical web of statutory dependencies into a decision silent on the issue necessarily fails.

---

[18] As Plaintiffs note in their briefing, if they subsequently discovered information sufficient to ground a Section 15(d) claim, the discovery rule might be implicated, which is normally a question of fact not suitable for resolution on a Motion to Dismiss. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 153–54 (Ill. 1985). *See also Heard, supra* note 5, at p. 10 (denying motion to dismiss a Section 15(d) claim, based on factual disputes surrounding timing of when and how frequently dissemination occurred).

## ii. Dissemination and Publication

At the core of it, Defendants argue that dissemination under Section 15(d) necessarily entails "publication" within the meaning of Section 13-201. They argue, among other things, that "publication" means any dissemination of private information, and by alleging that Defendants collected fingerprints, Plaintiffs have alleged that their fingerprints have been "published" into the timekeeping systems. Under this logic, because all biometric data must be collected, if collection is publication, then any BIPA claim necessarily entails publication, and triggers Section 13-201.

In order for Section 13-201 to apply, publication must be an element of the claim. *Benitez*, 305 Ill. App. 3d at 1034. Publication at common law generally means disclosure to the public at large. *Cordts v. Chi. Tribune Co.*, 369 Ill. App. 3d 601, 607 (1st Dist. 2006). Publication may be satisfied where the disclosure is to a smaller group of persons with a "special relationship" to the subject. *Id.* at 607–08 (quoting *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 980 (1st Dist. 1990) (itself quoting RESTATEMENT (SECOND) OF TORTS, §652(d), cmt. a (1977))).

Defendants pin their argument on the smaller group theory, citing *Popko* to support their assertion that publication can be satisfied by any communication to a third party, even within a corporation. *Popko v. Cont'l Cas. Co.*, 355 Ill. App. 3d 257, 264–65 (1st Dist. 2005). Because other employees were presumably involved with the collection of biometric data, Plaintiffs' biometrics would have been published to those other employees.

Setting aside the fact that these facts are themselves far afield of the Complaints—which do not, it is worth repeating, raise any sort of Section 15(d) claim—*Popko* is not compelling. Its discussion of publication is in the context of defamation, which has a much lower threshold for publication. The Restatement of Torts—which Illinois courts have explicitly adopted for defamation law, *Popko*, 355 Ill. App. 3d at 266—lays out the distinction quite clearly. Communication to a single person is sufficient publication for defamation. RESTATEMENT (SECOND) OF TORTS, §577, cmt. b (1977). But in the privacy context generally, publication must be to the public at large. *Id.* §652D, cmt. a (explicitly distinguishing defamation publicity).

Defendants' other authority is *Blair*, in which the court held Section 13-201 applicable to the Right of Publicity Act, which did not contain a statute of limitations. *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323 (2d Dist. 2006). The Right of Publicity Act did not, however, spring into the world fully formed. Rather, it replaced common-law appropriation of likeness, which was unquestionably subject to Section 13-201. *Id.* at 322–23. *Blair* simply carried through to the statute what had been the common-law rule, and its discussion is not particularly relevant here.

BIPA is a freestanding cause of action, not connected to any common-law rights that came before, and without a preexisting statute of limitations to draw on. Through the lens of publication in the privacy tort context generally, it is clear a Section 15(d) claim, which entails disclosure, redisclosure, or other dissemination of biometrics, does not necessarily create a "publication" within the meaning of Section

13-201. It is certainly possible that a Section 15(d) claim *could* be coupled by publication; for instance, an entity could run a full-page selection of fingerprints in the *Chicago Tribune*.[19] But the element of "dissemination" under Section 15(d) is not tantamount to "publication." And because publication is not an element of the claim, *see Benitez*, 305 Ill. App. 3d at 1034, Section 13-201 does not apply.

### C. Section 13-202: Penal Statutes

The second of two alternative statutes of limitation is Section 13-202. It is lengthy, but the operative language is brief:

> Actions . . . for a statutory penalty . . . shall be commenced within 2 years next after the cause of action accrued . . . .

735 ILL. COMP. STAT. 5/13-202. Unlike the Section 13-201 analysis, which looked at each claim individually, the determining factor here is whether BIPA is penal, remedial, or both. Consequently, the focus is not on the specific claims of Section 15, but on the relief permitted under Section 20. 740 ILL. COMP. STAT. 14/20.

### 1. The *Landis* Test

Determining whether a statute is penal for the purposes of Section 13-202 is a three-part test. A penal statute "must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 13 (Ill. 2009) (citing *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738 (2d Dist. 1982)). A statute must meet all three requirements to be considered penal. *Id.* at 15.

The first of the three requirements is satisfied, because BIPA imposes automatic liability. Indeed, *Rosenbach* confirms that the injury is complete and significant at the point in time when the statute is not complied with. 2019 IL 123186, ¶34.

The second of the three requirements is not satisfied. BIPA does not set forth a predetermined amount of damages. Rather, it provides that an injured party may recover the *greater* of liquidated damages, or actual damages. 740 ILL. COMP. STAT. 14/20(1) (for a negligent violation, $,1000), *id.* § 14/20(2) (for an intentional or reckless violation, $5,000). *Rosenbach* held that actual damages need not be stated to sustain a claim, 2019 IL 123186, ¶36, and indeed the Court suspects that most BIPA cases currently pending claim liquidated, rather than actual, damages. But the bare fact remains that the damages provision is not predetermined, but rather depends on the injury suffered.

The third of the three requirements is not satisfied for much the same reason. BIPA permits the recovery of liquidated *or* actual damages. A claim for actual

---

[19] And, in such a situation, application of Section 13-201 might well be reasonable. *See Webb v. CBS Broad. Inc.*, 2009 U.S. Dist. LEXIS 38597, at **7–8 (N.D. Ill. 2009) (time-barring injury based on publication, but permitting claim against the content itself to stand).

damages would of course be with regard to the actual damages suffered. Notably, the *Landis* test does not discuss what any given plaintiff has pled. Rather, it looks to the statute itself, and what is *possible* under the statute. Because it is possible that a plaintiff's actual damages exceed the liquidated damages, the liability imposed is related to the damages suffered, and this requirement fails. *See also Sternic v. Hunter Props., Inc.*, 344 Ill. App. 3d 915, 918–19 (1st Dist. 2003) (where statutory liability was the greater of actual damages or two months' rent, because the fixed amount was contingent on actual damages, it was related to actual damages).

Because the second and third prongs of the *Landis* test are not met, BIPA is not a penal statute. Section 13-202 cannot therefore apply.

## 2. *Standard Mutual* and the TCPA

Both parties discuss *Standard Mutual*, a recent Illinois Supreme Court case discussing whether the Telephone Consumer Protection Act was penal or remedial, and concluding that it was remedial. *Std. Mut. Ins. Co. v. Lay*, 2013 IL 114617. BIPA and the TCPA are quite similar mechanically, and the analogy is well-taken. *Standard Mutual* is an extraordinarily good comparator, and an extended discussion is appropriate.

*Standard Mutual* originated as an insurance dec action. The defendant, Lay, engaged a fax service to send its ads to five thousand Illinois fax machines. 2013 IL 114617, ¶4. Unbeknownst to Lay, that was a TCPA violation, and a class action lawsuit soon followed, which settled for $1.7 million. *Id.* ¶9. Lay tendered the defense to its insurer Standard Mutual, which defended under a reservation of rights. *Id.* ¶¶7, 11. Standard Mutual filed its declaratory action on a theory that the TCPA was a punitive statute, and punitive damages are uninsurable as a matter of law. *Id.* ¶11. Trial and appellate courts agreed, and thus the issue proceeded to the Illinois Supreme Court. *Id.* ¶16.

The TCPA prohibits, among other things, the unsolicited sending of faxes. 47 U.S.C. §227(b)(1)(C). It contains a private right of action, under which a person may seek injunctive relief and file an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* §227(b)(3)(B). Willful or knowing violations have a multiplier, under which damages may triple. *Id.* §227(b)(3).

The *Standard Mutual* court founded its analysis on the *Landis* test and its three factors. 2013 IL 114617, ¶30 (citing *Landis*, 235 Ill. 2d at 12–13). Examining the purpose of the TCPA, it held in no uncertain terms that the statute was remedial, not penal. *Id.*[20]

Discussing the purpose of the TCPA, the *Standard Mutual* court noted that, though a single fax was a minor harm, the aggregate violation was compensable, and represented by a $500 sum per instance. 2013 IL 114617, ¶31. That $500

---

[20] Thus, Defendants' critique that *Standard Mutual* was an insurance dec case, rather than a statute of limitations case, falls flat. Regardless of the reason why, it engaged in the exact same analysis a Section 13-202 statute of limitations inquiry would mandate.

amount was intended as, among others, an incentive for private enforcement, because actual losses would be trivial. *Id.* at ¶32. Whether viewed "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals." *Id.* This took the liquidated damages provision firmly out of the realm of the punitive.

Even the treble damages provision did not change the outcome. By analogy to the Illinois Consumer Fraud Act, because treble damages were one part of the TCPA's broader regulatory scheme, it was a supplemental aid to enforcement, not a punitive provision. *Id.* at ¶33 (quoting *Scott v. Association for Childbirth at Home, Int'l*, 88 Ill. 2d 279, 288 (Ill. 1981)).

The analogies to BIPA are self-evident, and laid out in some detail by Plaintiffs in their briefing. The key operative provisions of each statute are remarkably similar: TCPA permits recovery of "actual monetary loss from such a violation, or . . . $500 in damages for each such violation, whichever is greater," with treble damages on willful or knowing violations, while BIPA permits "liquidated damages of $1,000 or actual damages, whichever is greater," with liquidated damages of $5,000 for intentional or reckless violations. *Compare* 47 U.S.C. §227(b)(3)(B) *with* 740 ILL. COMP. STAT. 14/20(1), (2).

It is clear that, by permitting recovery of liquidated *or actual* damages, BIPA plants itself firmly as remedial, rather than penal. Indeed, other statutes that regulate through private enforcement often share the "greater-of" model by offering liquidated or statutory damages. These include the Illinois Cable Privacy Act, which permits actual, statutory, and punitive damages, 720 ILL. COMP. STAT. 5/16-18(h)(2)(C), 5/16-18(h)(2)(D), 5/16-18(h)(3). *see Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.*, 2014 U.S. Dist. LEXIS 134947, at **20–21 (C.D. Ill. 2014); portions of the Chicago Residential Landlord and Tenant Ordinance, Chi. Muni. Code §§ 5-12-110(e), 5-12-150 (hereafter "CMC"), *see Sternic*, 344 Ill. App. 3d at 918–19 (RLTO provisions not penal), and the AIDS Confidentiality Act, 410 ILL. COMP. STAT. 305/13(1)–(2).[21]

*Rosenbach* discusses the purpose of BIPA at some length. It concludes that private enforcement of BIPA for statutory violations alone is a necessary component in the statutory scheme to provide "the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." 2019 IL 123186, ¶37. BIPA's purpose, and the liquidated damages it provides, "clearly serve[] more than purely punitive or deterrent goals." *Standard Mutual*, 2013 IL 114617, ¶32. BIPA is remedial.

---

[21] Plaintiffs' citation to *Scott* for the proposition that ICFA is remedial is unhelpful. *Scott*, 88 Ill. 2d at 288. ICFA permits of private enforcement only for actual damages. 815 ILL. COMP. STAT. 505/10a(a). The *Attorney General* may additionally seek various civil penalties. *Id.* §505/7(b)–(c). But the AG is not subject to a statute of limitations anyway, so the point is somewhat moot. *Illinois v. Tri-Star Indus. Lighting, Inc.*, 2000 U.S. Dist. LEXIS 14948, **7–8 (N.D. Ill. 2000).

### 3. *Namur* and Split Identity

Defendants counter with *Namur*, a 1998 case discussing the Chicago Residential Landlord and Tenant Ordinance. *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007 (1st Dist. 1998). In *Namur*, the court considered two RLTO provisions. One provided for damages equal to twice the security deposit, plus five percent. CMC § 5-12-080(f). The other grants a flat $100 for failure to tender an RLTO summary document at renewal. CMC §5-12-170. *Namur* noted that some portions of the RLTO were penal, but the statute also had some remedial purposes. 294 Ill. App. 3d 1010–11 (citations omitted).

*Namur* held that both specific provisions at issue there were penal: the one specified a formula to calculate damages, and the other was a flat charge. *Id.* at 1011. The fact that damages were calculated depending on the security deposit was irrelevant, because the security deposit was not lost or seized in any way, and did not itself represent damages. It simply provided a way to calculate the number. *Id.*

Defendants posit that Plaintiffs paint with too broad a brush: *Namur* shows that it is possible for a statute to have parallel purposes, penal and remedial alike, and that it is possible to parse out the statute with more granularity than Plaintiffs propose. Curiously, Defendants do not actually discuss what such a split analysis would look like.

On *Namur*'s analysis, the Court does not believe BIPA has such a split identity. Even if it did, *Namur* itself does not suggest that the relevant portions would be penal. And finally, it seems evident that, to whatever extent *Namur* set out a flat rule, it has since been overruled by implication of *Landis* and *Standard Mutual* alike.

First, it is worth noting that *Namur* addressed the RLTO, a sprawling collection of provisions and causes of action. In the RLTO context, cases address the penal-remedial distinction on a section-by-section basis. *Sternic*, 344 Ill. App. 3d at 918 (citing *Namur*). So, while *Namur* parses out the distinctions between sections within a much larger statute, the cause of action remains the smallest unit of analysis. BIPA, by contrast, contains only one cause of action: Section 20. *Namur* never proposed to split up a single cause of action into penal and remedial portions, and the Court sees no reason to do so here.

Second, the ordinances at issue in *Namur* provided for a formula and a flat fine. The formula there was pegged to the security deposit, but had no connection to actual damages. 294 Ill. App. 3d 1011. And the flat fine was exactly that. *Id.* Whereas the RLTO did not refer to or account for actual damages BIPA does, by offering plaintiffs the choice. *Namur*'s analysis simply does not apply.

Third and finally, Defendants' quotation of *Namur* suggests they mean to extract a rule that statutes "are penal because they specify either the amount of damages that can be awarded for violations or the formula by which the amount of damages is to be calculated." *Id.* at 1011. And BIPA sets forth, among other things, fixed liquidated damages. 740 Ill. Comp. Stat. 14/20(1)–(2). To the extent *Namur* may have articulated such a rule—and the Court is unconvinced that it did—it is clearly no longer good law. *Landis* makes clear that the *absence* of actual damages

is a defining factor under the third prong. 235 Ill. 2d at 14. And *Standard Mutual*, of course, holds the TCPA and its alternative damages calculation remedial. 2013 IL 114617, ¶32.

Under the *Landis* test, BIPA is remedial. Such a characterization accords with the conclusion of *Standard Mutual*, and is unchanged by any aspect of *Namur*.

## D. Section 13-202: Personal Injury

Section 13-202 is a large provision, and Defendants argue that another portion of its language is also relevant here:

The second of two alternative statutes of limitation is Section 13-202. It is lengthy, but the operative language is brief:

> Actions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . .

735 Ill. Comp. Stat. 5/13-202. Defendants advance this argument only briefly, abandoning it on Reply and at hearing, but it bears brief discussion. Because Plaintiffs allege that Defendants negligently violated BIPA, and that the negligent acts caused Plaintiffs injury, it therefore alleges a "personal injury (negligence) claim" subject to Section 13-202's "injury to the person" language.

The flaws in such a position are self-evident, perhaps nowhere more than the bare fact that BIPA has nothing to do with personal injury. *See also* Part III.C *supra* (discussing, at length, how BIPA *differs* from personal injury claim).

More to the point, Section 13-202's "personal injury" language is even narrower than the compensability analysis under the Workers' Compensation Act. "Illinois courts uniformly have interpreted the language in section 13-202 narrowly . . . . In other words, contrary to its express language, section 13-202 does not extend to all personal injury claims." *Smith v. National Health Care Services*, 934 F.2d 95, 97–98 (7th Cir. 1991). This is in part because Section 13-202 lists a great number of torts, the enumeration of which cuts back the scope of "personal injury." *See Berghoff v. R.J. Frisby Mfg. Co., Div. of Western Capital Corp.*, 720 F. Supp. 649, 653 (N.D. Ill. 1989).

BIPA does not present—and, barring some sort of freak electrical short in a fingerprint scanner, appears largely incapable of presenting—a personal injury claim. Section 13-202 does not apply.

Because neither Section 13-201 nor Section 13-202 applies, BIPA is a civil action not otherwise provided for. *See* 735 Ill. Comp. Stat. 5/13-205. Pursuant to Section 13-205, it is subject to a five-year statute of limitations. All Plaintiffs' claims are timely.

### E. Accrual of Claims

The final arguments concern when, exactly, the various Plaintiffs' claims accrued. The Court's prior rulings make this issue moot, but the Court sketches the argument here for completeness.

Defendants, quoting familiar claim-accrual language, assert that Plaintiffs' claims accrued when they knew or reasonably should have known of their injury, and that it was wrongfully caused. *E.g., Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (Ill. 1981) (citations omitted). Plaintiffs, just like Defendants, are presumed to know the law. *Jones*, 2013 IL App (1st) 122437, ¶22. Therefore, argue Defendants, if Plaintiffs indeed started working, had their biometric data collected, but did not receive sufficient disclosures, they should have known at that time that a BIPA claim had accrued.[22]

Plaintiffs counter with two theories. First, the violation can be viewed as s series of independent acts: each time a finger was scanned, a new BIPA claim accrues. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 199 Ill. 2d 325, 349 (Ill. 2002). Thus, though initial violations may have occurred outside the statute of limitations, more recent ones are still timely.

Second, because each collection occurs within the context of continuous employment, the BIPA violation could be viewed as a continuing injury. *See Taylor v. Bd. of Educ.*, 2014 IL App (1st) 123744, ¶46. Under such a theory, the statute of limitations is held in abeyance, and only starts to run when the course of conduct comes to an end.[23]

Here, Plaintiff Owens started her employment in 2014, and filed less than four years later; Plaintiff Garcia started her employment in 2016, and filed just over two years later; Plaintiff Young started his employment in 2017, just over a year before filing. Because the Court has held that BIPA is subject to a five-year statute of limitations, all potential claims are timely, even if the claims accrued on the date employment began. It is therefore not necessary to address the issue of claim accrual at this time.[24]

---

[22] It is unclear how, if at all, this analysis would apply to a Section 15(d) dissemination claim, if one were pled. *See* Part IV.B.3 *supra* (no such claims made). Presumably, the discovery rule would be implicated. *See* note 18 *supra*.

[23] The Court observes that its colleagues have favored the second theory, that of the continuing tort. *See Cortez, supra* note 5, at pp 7–9; *Woodard, supra* note 5, at pp. 14–15. *See also Heard, supra* note 5, at p. 10 (continuing tort presents question of fact). *But see Robertson I, supra* note 5, at pp. 4–5 (claim accrues at first scan).

[24] The Court recognizes that whether BIPA presents a single continuing injury or a series of repeated injuries has tremendous implications for Plaintiffs' potential recovery—to say nothing of Defendants' exposure. Because resolution of the question is not necessary for the pending motion, the Court declines to do so in this particular procedural posture.

**F. Further Proceedings**

The Court is aware that a number of the questions treated above are pending before other, superior courts.[25] Because this case was briefed, argued, and taken under advisement prior to those developments, the Court thought it appropriate to dispose of the pending matters.[26]

To the extent further developments may affect these cases, the Court has no doubt that the appropriate parties will file appropriate motions. In light of the constellation of external litigation, however, the Court will stay Defendants' responsive pleading until the next status date, when the parties can advise as to their intended courses of action.

## V. Orders

Defendants' Motion to Dismiss is denied in its entirety.

Defendants' obligation to file a responsive pleading is stayed until the next status in this matter. At that time, the Court anticipates setting a pleadings deadline, unless the parties request that proceedings be further stayed.

This matter is set for status on **Friday, June 26, 2020, at 10:00 a.m.** via teleconference. The Court will contact the parties in advance of the hearing and provide specific hearing information.

Chambers staff will email a copy of this Order to the parties.

ENTERED:

ENTERED
Judge Anna Loftus
JUN 08 2020
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

/s/ Anna M. Loftus

Judge Anna M. Loftus, No. 2102
June 8, 2020

---

[25] The Workers' Compensation Act issue has been certified to the First District in *McDonald II*, and to the Third by *Marion II*. The Section 13-201 one-year statute of limitations has been certified to the First District by *Tims II* and *Cortez*, and to the Third by *Marion II*. The Section 13-202 two-year statute of limitations has certified to the Third District by *Marion II*. And one form of the accrual question has been certified to the First District by *Cortez*, while another certification is imminent in *Robertson III*. The Court is without specific knowledge of the status of those various appeals.
[26] The Court notes that this is one of three concurrently issued written opinions addressing BIPA. The other two are *Young v. Tri-City Foods*, 18 CH 13114 (Cir. Ct. Cook Co., June 8, 2020), which is substantially similar to this one, and *Wells v. Relish Labs*, 19 CH 00987 (Cir. Ct. Cook Co., June 8, 2020), which treats the same issues but is not as closely related.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Joe Young,<br>*individually and on behalf of all others*<br>*similarly situated,*<br><br>  Plaintiff,<br><br>v.<br><br>Tri City Foods, Inc.,<br><br>  Defendant. | No. 18 CH 13114<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

### MEMORANDUM OPINION & ORDER

   This case, a proposed class action under the Biometric Information Privacy Act, presents a number of fundamental questions about the BIPA statute itself, its interaction with other legislative schemes, and the nature of a BIPA injury. These questions are raised by way of Motions to Dismiss, which the Court denies.

   BIPA is not preempted by the Workers' Compensation Act. A BIPA injury is not the type of injury that is compensable under the Act. Because it is not compensable, the Act's exclusivity provision does not apply.

   BIPA is subject to a five-year statute of limitations. The one-year statute of limitations only applies to privacy torts involving publications. Plaintiffs have made no such claim, and even if they did, BIPA does not require publication. The two-year statute of limitations applies to penal statutes. BIPA provides for statutory liquidated damages, but only as part of a broader remedial scheme that permits for actual damages. It is not penal, and the two-year statute does not apply either.

   Because neither specialized statute of limitations applies, BIPA is subject to the five-year "catchall" statute of limitations. In light of this holding, the Court need not address when or how the various Plaintiffs' claims accrued, because under a five-year statute of limitations, all claims are timely.

   The Motion to Dismiss is denied in its entirety.

# I. Background

This opinion discusses two cases: *Owens v. Wendy's*, 18 CH 11423, and *Young v. Tri City Foods*, 18 CH 13114. Each case is a BIPA class action brought by employees; though the parties are different, Plaintiff's counsel, Defendants' counsel, and even the third-party respondent in discovery are the same. Indeed, in almost every aspect relevant here, the cases are essentially the same.[1]

The cases have not been consolidated or transferred, and are not formally connected. Rather, they were both randomly assigned to the same calendar, and have been lockstepped since case management. The parties capitalized on this serendipity and have briefed and argued the (separate, but almost identical) Motions to Dismiss in parallel. The Court's ruling is the same in both cases, and so substantially similar orders will be entered in both.

With that having been said: each Complaint is pled as a putative class action, on behalf of all employees who used a biometric time clock during a particular timeframe. Because the Complaints are framed as such, each individual Plaintiffs' factual circumstance is less relevant—in a proper class, the named plaintiff(s) would largely be fungible, because the underlying legal issues would predominate.

Nevertheless, because no class has been certified, the Court takes a moment to describe the factual allegations each set of Plaintiffs make concerning their respective biometric events. The Court takes the allegations as true for the purposes of the present Motions to Dismiss. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (Ill. 1997).

## A. *Owens v. Wendy's*, 18 CH 11423

Wendy's is a well-known fast food restaurant chain. When employees first begin working for Wendy's, they are required to have their fingerprints scanned for an employee database. Employees then use fingerprints at their timeclocks to clock in and clock out of work. They also use fingerprints to unlock point-of-sale systems, including cash registers.

The Complaint alleges that Wendy's did not make any biometric disclosures to its employees, including why the information is collected, or to whom it might be disclosed. It also alleges that Wendy's did not provide written policies for retention or destruction of data, or offer guidelines for what happens to that data following an employee's separation.

The two named Plaintiffs, Owens and Garcia, each worked at a Wendy's in Illinois. Owens worked through July 2017; Garcia through July 2016.[2] Upon hiring, their fingerprints were collected; during their employment, they used fingerprint

---

[1] The sole exception is with respect to the effect of a two-year statute of limitations on claim accrual, discussed briefly in Part IV.E below. *See* Hrg. Tr. 32:19–33:15 (June 10, 2019).

[2] This Complaint does not provide specific dates when either Plaintiff began their employment. This particular information is not relevant to the disposition of the present Motion. *See* Part IV.E *infra* (accrual of claims moot).

scans to clock in and out and access POS systems. Neither was given biometric disclosures or written policies, and neither executed a release.

Plaintiffs filed suit on September 11, 2018. The Complaint alleges that Wendy's negligently failed to promulgate a retention policy under Section 15(a), or make necessary biometric disclosures under Section 15(b). 740 ILL. COMP. STAT. 14/15(a), (b). These claims cumulate in a single count for negligent violation of BIPA. *Id.* § 14/20(1). The Complaint's proposed class encompasses all Illinois residents whose fingerprints came into Wendy's' possession.

### B. *Young v. Tri City Foods*, 18 CH 13114

Tri City Foods is a franchisee for Burger King, another well-known fast food restaurant chain. The substantive allegations are familiar: when employees first begin working for Tri City Foods, their fingerprints are scanned for a database. Employees use fingerprints at their timeclocks to clock in and out of work. This Complaint alleges that Tri City Foods did not make any biometric disclosures, or provide a retention or destruction policy.

The named Plaintiff, Young, worked for Tri City Foods from July 2017 to January 2018. His fingerprints were collected at the beginning of his employment, and he used fingerprints to clock in and out of work. He was not given biometric disclosures or written policies, and did not execute a release.

Plaintiff filed suit on October 22, 2018. The Complaint alleges that Tri City Foods negligently failed to promulgate a retention policy under Section 15(a), and make disclosures under Section 15(b). 740 ILL. COMP. STAT. 14/15(a), (b). As before, it presents a single count for negligent violation of BIPA. *Id.* § 14/20(1). The Complaint's proposed class encompasses all Illinois residents whose biometric data[3] came into Tri City Foods' possession.[4]

### C. Procedural Developments

As noted above, though these twin cases were filed separately, they were both randomly assigned to the same calendar, and have proceeded in parallel since initial case management. Both were stayed for a time pending the Illinois Supreme Court's decision in *Rosenbach*, 2019 IL 123186. Once that ruling issued, parallel motions to dismiss were filed, briefed, and argued, with the Court taking the matters under advisement on June 10, 2019.

Since then, Plaintiffs have sought leave to supplement the records with additional authority in the form of recent trial court decisions on these issues in similar cases. After the third such motion, the Court advised the parties to refrain

---

[3] BIPA defines "biometric identifier" and "biometric information" separately. 740 ILL. COMP. STAT. 14/10. For ease of reference, and because the difference between the two is not relevant here, the Court refers to both of these terms collectively as "biometric data."

[4] Whereas the *Owens* class specifically refers to fingerprints, the *Young* complaint refers instead to "biometric identifiers or biometric information." It is unclear why the class is more broadly defined, given that *Young* only alleges collection of fingerprints. For ease of reference, the Court refers to the allegations across both cases as fingerprinting generally.

from bringing further ones. The Court is aware of its colleagues' decisions, and no citation is needed to consider such public records.[5]

These decisions are not, of course, binding in any way, nor were they offered as such. Nevertheless, in such a rapidly evolving area of the law as this, where binding authority on these questions does not yet exist, it is appropriate to consider nonbinding persuasive authority. *E.g., Perik v. JPMorgan Chase Bank, N.A.*, 2015 IL App (1st) 132245, ¶25. Binding or not, "Nothing, however, bars a court from adopting sound reasoning." *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶27. The Court happens to agree with the majority of its colleagues, but as this opinion demonstrates, its reasons are its own.

Finally, in the *Young* case only, Defendant moved to amend the Motion to Dismiss—which by that point had been fully briefed, argued, taken under advisement, and thrice supplemented—by adding a constitutional challenge. The Court denied that request, without prejudice; these matters are complex enough as they stand.

## II. Legal Standards

Both Motions to Dismiss raise identical arguments by way of Section 2-619. Such motions require that the Court accept as true all well-pleaded facts and their attendant inferences. Specifically, Defendants raise arguments under Sections 2-619(a)(9) and (a)(5). 735 ILL. COMP. STAT. 5/2-619.

The Section 2-619(a)(9) arguments raised by Defendant seek a dismissal upon a showing of other affirmative matters, outside the four corners of the complaint, which defeat the claim in whole or in part. *Alford v. Shelton (In re Estate of Shelton)*, 2017 IL 121199, ¶21. Here, the affirmative matter is the exclusivity

---

[5] The Court is familiar with twenty-one written decisions from trial courts addressing the Workers' Compensation Act, BIPA's statute of limitations, or both, to wit:
*McDonald v. Symphony*, 17 CH 11311 (Cir. Ct. Cook Co., June 17, 2019) (Judge Mitchell) (*McDonald I*);
*Fluker v. Glanbia*, 17 CH 12993 (Cir. Ct. Cook Co., July 11, 2019) (Judge Mitchell);
*Robertson v. Hostmark*, 18 CH 5194 (Cir. Ct. Cook Co., July 31, 2019) (Judge Cohen) (*Robertson I*);
*Mims v. Freedman*, 18 CH 9806 (Cir. Ct. Cook Co., Aug. 22, 2019) (Judge Demacopoulos);
*Chavez v. Temperature Equipment*, 19 CH 2358 (Cir. Ct. Cook Co., Sept. 11, 2019) (Judge Jacobius);
*Tims v. Black Horse*, 19 CH 3522 (Cir. Ct. Cook Co., Sept. 23, 2019) (Judge Atkins) (*Tims I*);
*Roach v. Walmart*, 19 CH 1107 (Cir. Ct. Cook Co., Oct. 25, 2019) (Judge Meyerson);
*McDonald v. Symphony*, 17 CH 11311 (Cir. Ct. Cook Co., Oct. 29, 2019) (Judge Mitchell) (*McDonald II*);
*Carrasco v. Freudenberg*, 19 L 279 (Cir. Ct. Kane Co., Nov. 15, 2019) (Judge Pheanis);
*Cortez v. Headly*, 19 CH 4935 (Cir. Ct. Cook Co., Nov. 20, 2019) (Judge Demacopoulos);
*Woodard v. Dylan's Candybar*, 19 CH 5158 (Cir. Ct. Cook Co., Nov. 20, 2019) (Judge Demacopoulos);
*Figueroa v. Tony's Finer Foods*, 18 CH 15728 (Cir. Ct. Cook Co., Dec. 10, 2019) (Judge Moreland);
*Heard v. THC – North Shore*, 17 CH 16917 (Cir. Ct. Cook Co., Dec. 12, 2019) (Judge Valderrama);
*Treadwell v. Power*, 2019 U.S. Dist. LEXIS 215467 (N.D. Ill. Dec. 16, 2019);
*Marion v. Ring Container*, 19 L 89 (Cir. Ct. Kankakee Co., Jan. 24, 2020) (Judge Albrecht) (*Marion I*);
*Robertson v. Hostmark Hospitality*, 18 CH 5194 (Cir. Ct. Cook Co., Jan. 27, 2020) (Judge Cohen) (*Robertson II*);
*Tims v. Black Horse*, 19 CH 3522 (Cir. Ct. Cook Co., Feb. 26, 2020) (Judge Atkins) (*Tims II*);
*Smith v. Top Die*, 19 L 248 (Cir. Ct. Winnebago Co., Mar. 12, 2020) (Judge Honzel);
*Cortez v. Headly*, 19 CH 4935 (Cir. Ct. Cook Co., Mar. 13, 2020) (Judge Demacopoulos);*Marion v. Ring Container*, 19 L 89 (Cir. Ct. Kankakee Co., April 17, 2020) (Judge Albrecht) (*Marion II*); and
*Robertson v. Hostmark*, 18 CH 5194 (Cir. Ct. Cook Co., May 29, 2020) (Judge Cohen) (*Robertson III*).

provision of the Workers' Compensation Act. 820 ILL. COMP. STAT. 305/5(a), 305/11. Exclusivity is properly raised by way of Section 2-619(a)(9). *See Folta v. Ferro Engineering*, 2015 IL 118070, ¶¶7, 10.

The Section 2-619(a)(5) arguments assert that the claims are barred by the applicable statute of limitations. Here, BIPA does not identify a limitations period. Defendants argue the one-year privacy statute of limitations applies, 735 ILL. COMP. STAT. 5/13-201, and in the alternative that the two-year statute for penalties or personal injury claims applies, *id.* 5/13-202. Plaintiffs propose the five-year catchall statute applies. *Id.* 5/13-205. Determining whether the claims are timely requires identifying which statute of limitations applies, which is properly done on a Section 2-619(a)(5) motion. *See O'Toole v. Chi. Zoological Soc'y*, 2015 IL 118254, ¶16.

## III. Workers' Compensation Act

The Workers' Compensation Act establishes a comprehensive regime for workplace injuries, providing exclusive relief and precluding all other causes of action. The Act's exclusivity provision has four judicially recognized exceptions. Two of those are relevant here: whether the injury was not accidental, and whether it is compensable under the Act. If either exception is met, the Act's exclusivity provisions do not apply, and the cause of action is permitted.

The Court declines to rule on the first exception concerning the (non)accidental nature of the alleged BIPA violations, because the ramifications of such a ruling extend beyond the questions presented. The Court holds, however, that BIPA injuries lie categorically outside the scope of the Act, and are not compensable. The Act's exclusivity provisions therefore do not apply to bar the cause of action.

### A. Statutory Scheme

The Illinois Workers' Compensation Act is often described as a grand bargain between employees and employers.[6] Employees benefit from no-fault liability, which offers an easier path to recovery for workplace injuries. Employers accept this liability in exchange for protection from common-law suits and overly large verdicts. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (Ill. 1990).

Crucial to this scheme is the exclusivity provision of the Act. Section 5(a) provides that "no common law or statutory right to recover damages from the employer . . . is available to any employee who is covered by the provisions of this Act." 820 ILL. COMP. STAT. 305/5(a). Section 11, in turn, provides limitations on the measure of responsibility attributable to an employer—i.e. their liability exposure. *Id.* 305/11.

---

[6] Though, curiously, the phrase "grand bargain" itself does not appear in Illinois caselaw at all, and only sporadically elsewhere. *See* Emily A. Spieler, *(Re)assessing the Grand Bargain: Compensation for Work Injuries in the United States, 1900–2017*, 69 RUTGERS L. REV. 891, 893 n.4 (2017) (history of phrase).

The practical import of the exclusivity provision is that employees cannot bring common-law suits against an employer unless one of four exceptions is met, which requires the employee to prove:

(1) that the injury was not accidental;
(2) that the injury did not arise from his or her employment;
(3) that the injury was not received during the course of employment; or
(4) that the injury was not compensable under the Act.

*Meerbrey*, 139 Ill. 2d at 463 (citing *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (Ill. 1980) (formatted for clarity). Unless an exception is met, the claim will fall within the exclusive scope of the Act. In that case, a Section 2-619 dismissal is proper, and the employee must turn to the Workers' Compensation Commission as the proper adjudicating authority.

Here, the parties agree that the second and third exceptions are not at issue: the fingerprinting arose from the employment, and the alleged BIPA violations were received in the course of employment.[7] At issue are the first and fourth exceptions: whether the injury was accidental, and whether it is compensable. If either exception is met, the claim may proceed.

## B. Accidental Injury

Defendants argue that, while Plaintiffs allege a negligent violation of BIPA, the first exception requires the injury be *not accidental*, and it is inconsistent to argue a claim is both not an accident and negligent. The analysis is more complex than Defendants' position suggests, and hinges on the implications of what Plaintiffs have pled and the mechanics of their claim.

It is possible for a claim of negligence to include sufficient allegations as to specific intent to meet this exception. But the question of whether that can be done in a BIPA case has ramifications well beyond the scope of the issue at hand. The Court declines to rule on the issue at this time.

### 1. "Accidental"

In the realm of workers' compensation, "accidental" is not a specifically defined term of art. Rather, it refers to "anything that happens without design or an event which is unforeseen by the person to whom it happens." *Meerbrey*, 139 Ill. 2d at 463 (quoting *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (Ill. 1976)). Some cases are self-evident: if the employer directs, encourages, or commits an intentional tort, the exception is met. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 239 (Ill. 1980). Negligence, however, is more difficult.

---

[7] Other courts have held that, where fingerprinting is made a condition of employment, the BIPA violation manifests *prior* to the term of employment. This implicates, among others, the applicability of the third exception. *See Mims, supra* note 5, at pp. 5–6; *Woodard, supra* note 5, at p 9. Neither case here presents this theory, but it is worth noting.

Not all negligence cases are barred. *Schusse v. Pace Suburban Bus Div. of the Reg'l Transp. Auth.*, 334 Ill. App. 3d 960, 965 (1st Dist. 2002) (blanket preemption of negligence cases "would be contrary to *Meerbrey*."). But negligence cases do pose a grey area.

The First District recently examined the intersection of negligence and accident in *Garland v. Morgan Stanley*, which concerned a deadly crash of a small aircraft engaged by Morgan Stanley for a business trip. 2013 IL App (1st) 112121, ¶¶5–6. The *Garland* court did not hold that claims of negligence were necessarily accidental within the meaning of the first exception to the Act. It did, however, discuss the relevant standards. *Id.* at ¶¶29–30. The court held "the employee must establish that his employer or co-employee acted deliberately and with specific intent to injure the employee." *Id.* at ¶29 (citing *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 214 (4th Dist. 1991)). Without that specific intent, even conduct "beyond aggravated negligence" was insufficient. *Garland*, 2013 IL App (1st) 112121, ¶29 (quoting *Copass*, 211 Ill. App. 3d at 214).

Ultimately, the *Garland* plaintiff proposed a grave negligence claim, containing everything leading up to, but not including, the particular allegation that the employer specifically intended the injury. *Garland*, 2013 IL App (1st) 112121, ¶¶16, 30. The *Garland* court rejected the claim, holding the employer's intention was the essential ingredient: "the employee must show that the employer specifically intended to injure the plaintiff." *Id.* at ¶30 (collecting citations).

Here, and on the face of the pleading, Plaintiffs have an uphill battle, as their claims sound in negligence only.

## 2. The *Treadwell* Analysis

As of this writing, the Court knows of only one case that has discussed the accident prong within the context of BIPA: *Treadwell v. Power Solutions*, a Northern District case. 2019 U.S. Dist. LEXIS 215467 (N.D. Ill., Dec. 16, 2019).[8] There, the defendant protested there were no specific allegations of specific intent, and without them, the claim could not be accidental. *Id.* at *9. Specifically, the defendant charged that plaintiff had alleged a "series of omissions," rather than any affirmative intent. *Id.*

The court disagreed: the plaintiff alleged the defendant's intent to collect fingerprints; the BIPA violation occurred at the time of collection, without more; and—crucially— defendant was presumed to know the law. *Id.* at **9–10 (citations omitted). The specific allegation that the employer intended to collect fingerprints, coupled with the fact that the employer was presumed to know the action, by itself,

---

[8] One other case, *Marion v. Ring Container*, touches on the accident prong, holding flatly that the defendant there "has not established that the injuries alleged are . . . accidental . . . . Violation of [BIPA] requires a deliberate act[.]" 19 L 89, at p.2 (Cir. Ct. Kankakee Co., Jan. 24, 2020). Without access to the pleadings, it is unclear whether *Marion* concerned allegations of a *negligent* BIPA violation; without that information, its conclusion is not overly useful. *Treadwell* doesn't specify whether the allegations there pointed to negligence, but its discussion is substantially longer, and provides a more useful point of reference.

would be a violation, meant the allegation of specific intent to collect necessarily included an inferred allegation of specific intent to violate BIPA.

Plaintiffs' briefing predates *Treadwell* but tracks this logic. They argue the decision to require employees to use biometric timeclocks was intentional, and the decision was a result of the purposeful "design" of the employer. This tracks part of the *Meerbrey* definition of "accidental" as "anything that happens without design." *Meerbrey*, 139 Ill. 2d at 463.

But it also fits in with the *Treadwell* analysis. Everyone is presumed to know the law. *Jones v. Bd. of Educ.*, 2013 IL App (1st) 122437, ¶22. This naturally applies to BIPA, even though it lay dormant until recently. If the system will violate BIPA, and Plaintiffs allege the system was intentionally implemented, then that underlying allegation necessarily entails the further allegation that Defendants intended to cause BIPA violations to occur. And *that* is an allegation of intentionality sufficient to trigger the first exception, as the claim would no longer be accidental.

### 3. Intentionality and BIPA

This is a logical, appealing analysis. And yet the Court hesitates to adopt it, not because it leads to an incorrect conclusion here, but because of its potential ramifications. This *Treadwell* logic applies to the employer's intent *generally*, which interacts with other parts of the case—specifically, the nature of the BIPA claim itself.[9] If installing a timeclock alone is enough to intend to violate BIPA, then any claim for a negligent violation under Section 20(1) would *necessarily* evolve into a claim for an intentional violation under Section 20(2)—for, after all, the installation was intentional, and would be enough to intend the violation itself. 740 ILL. COMP. STAT. 14/20.

It is easy to imagine a negligent violation of BIPA: a supervisor forgets to close out of a secure system, allowing a mustachioed tortfeasor to pilfer the files, using them to commit identity theft. But it is difficult to see how the *Treadwell* analysis permits negligent BIPA claims in the employment context. Perhaps all employment claims are necessarily intentional. Perhaps not. But that investigation ranges well beyond the questions presented in this case, into what exactly the state of mind requirements for BIPA are.

The Court need not resolve these questions. Because the fourth exception is met, the claims survive, and the Court will decline to rule as to the first exception. The nature of negligence may return, but not at this time.

### C. Compensability

The Workers' Compensation Act only precludes causes of action that are compensable under the Act. The relevant standard of law here is thinly developed, but this fourth exception requires analyzing the nature of the injury itself to

---

[9] By comparison, the Court's conclusion in Part III.C *infra* that BIPA claims are not compensable under the Act only applies to the Workers' Compensation Act, and does not "feed back," so to speak, into the claim itself.

determine whether it categorically fits within the Act's scope. BIPA injury is fundamentally different from every other type of injury covered by the Act. Because BIPA categorically does *not* fit under the Act, the fourth exception is met, and the Act does not bar the claim.

### 1. Identity of Tests

The fourth exception to the Workers' Compensation Act's preclusion regime requires "that the injury was not compensable under the Act." *Meerbrey*, 139 Ill. 2d at 463. Defendants argue an injury is compensable, and thus the exclusivity provision applies, when the injury arises out of the employment, and is incurred in the course of employment. These are, of course, the second and third exceptions. Defendants' position entails that, where the second and third exceptions are not met, the fourth can never be met.

For this proposition, Defendants point to *Sjostrom*, a 1965 case which provides that an injury is compensable if suffered in the line of duty; the "line of duty" test is identical to the "compensability" test; and both are satisfied by a showing that the injury arose "out of and in the course of employment." 33 Ill. 2d 40, 43 (Ill. 1965).[10]

Defendants insist this limited test is still controlling law. They point to a recent case centered on the compensability language: *Folta*. There, on its initial appeal, the defendant proposed to define "compensability" in the same way Defendants do here: "an injury is not compensable only if it does not arise out of and in the course of employment." *Folta v. Ferro Engineering*, 2014 IL App (1st) 123219, ¶29. The First District rejected the definition, holding that to define the fourth exception by reference to the second and third would render that fourth exception "superfluous." *Id.* ¶30. But the Supreme Court reversed, with an extended discussion of compensability that cited, among others, *Sjostrom*. 2015 IL 118070, ¶18.

Defendants conclude this means the First District's ruling is irrelevant, *Sjostrom* is good law, and compensability is essentially a restatement of the second and third exceptions. And because Plaintiffs here conceded the second and third exceptions are not met, Defendants conclude the fourth cannot be, either. But Defendants misconstrue the import of *Folta*, both in terms of what it says and what it means.

### i. Scope of Reversal

On a purely technically level, though the Supreme Court reversed the First District's ruling, it did not address the First District's conclusion that the fourth exception had to be something more than a restatement of the second and third exceptions. Indeed, the Supreme Court remarked that the plaintiff there conceded

---

[10] As noted above, other courts have held that, where fingerprinting is made a condition of employment, it necessarily falls outside of the line of duty. *Supra* note 7. Such a holding would terminate the analysis here, in Plaintiffs' favor. Again, because neither party has raised the issue, the Court declines to address it further.

the injury "was accidental and arose out of and during the course of his employment." *Folta*, 2015 IL 118070, ¶16. If the Court agreed with the defendant there—and Defendants here—that meeting the second and third exceptions was sufficient, then that statement *alone* would be enough to end the case.

Not only does the Court *not* end there, but it uses that proposition to springboard into the meat of its opinion: a lengthy discussion of whether and how recoverability plays into compensability, the main issue upon which the Court reversed. *See id.* at ¶¶25–43. With respect to the First District's characterization of the fourth exception, the Supreme Court's reversal was on other grounds.

### ii. A Broader Analysis

More generally, Defendants' reading is too simplistic. We know this because the Supreme Court tells us so in *Folta* itself. The paragraph discussing *Sjostrom* is part of a broader discussion of the Court's compensability caselaw. Indeed, the very next paragraph notes, with respect to *Sjostrom* and similar cases, "Although this court equated 'compensable' with 'line of duty,' the sole question raised in those cases was whether the plaintiff's injuries arose out of or in the course of his employment." After acknowledging the contextual limitations of the *Sjostrom* analysis, the *Folta* court describes how "In another line of cases we further refined our inquiry as to what is meant by compensable by considering whether an employee was covered under the Act where the essence of the harm was a psychological disability, and not a traditional physical injury." *Id.*

These cases consider compensability by looking to the nature of the injury itself. *Pathfinder* was the first, holding psychological injury compensable under the Act. *Pathfinder Co. v. Industrial Com.*, 62 Ill. 2d 556, 563 (Ill. 1976). Its progeny—unquestionably still good law—lead to the classification of "physical-mental" injury, which Plaintiff discusses by way of analogy slightly later on. *See Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶30 (collecting cases and discussing compensability of "physical-mental" injuries).

That entire branch of the caselaw flows from an analysis of the fourth "compensability" exception as requiring something additional: an investigation of the nature of the injury. If the fourth exception was simply a regurgitation of the second and third, then the nature of the injury would be irrelevant, and nearly fifty years of caselaw would be fatally undercut.

Finally, we know Defendants' read of *Folta* is incorrect because the case says so. After recapping its entire compensability caselaw, the *Folta* court concludes "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." 2015 IL 118070, ¶23. The Court goes on to discuss how recoverability fits in, but it conspicuously omits further discussion of the second or third exceptions. There may be quite a bit of overlap in the scope of the second, third, and fourth exceptions, but it is undeniably clear that, in the Supreme Court's view, compensability requires a separate analysis, one which this Court must now undertake.

## 2. A Note on Statutory Construction

Both parties spill some ink discussing principles of statutory construction, including whether and how one or the other statutes takes priority by virtue of being older, more specific, and so forth. Defendants propose that the Workers' Compensation Act trumps BIPA, and the exclusivity provision applies; Plaintiffs, unsurprisingly, propose the opposite.

Neither analysis is relevant here. Where the plain language of the statute admits of only one interpretation, it is dispositive of the inquiry. *Hadley v. Ill. Dep't of Corr.*, 224 Ill. 2d 365, 371 (Ill. 2007). Unambiguous statutes must be applied as written, without reference to the tools of statutory construction. *Id.*; *Taylor v. Pekin Ins. Co.*, 231 Ill. 2d 390, 395 (Ill. 2008). Those tools only come into play when there is an ambiguous statute to be constructed. And here, the conflict between the Workers' Compensation Act and BIPA does not arise from what either of them say: there is no ambiguity, and the plain language is largely irrelevant.

The Act does not preempt specific causes of action—nor could it, as it is designed to provide a general statutory scheme that precludes whole swathes of litigation. It is explicitly designed to provide a general rule that may indeed prevail over specific statutory causes of action.

BIPA, in turn, does not say anything about the Act. We know it applies in the employment context, because it notes how releases can be conditions of employment. 740 ILL. COMP. STAT. 14/15. But BIPA says nothing about the extent of its application in the employment context; as Defendants note, even if the Act barred a BIPA claim at law, it would still permit an employee to seek an injunction. *Id.* 14/20(4). BIPA *could* have been excluded from the Act's scope, *see* 410 ILL. COMP. STAT. 305/14 (AIDS Confidentiality Act's non-preemption provision), but the absence of such a provision does not mean that it is automatically preempted.

Statutory construction is simply a poor tool for this analysis. Each statute says what it says, plainly and unambiguously. The question for the Court's consideration cannot be answered by teasing out meaning from the language of the statutes, because neither addresses this type of interaction. Rather, the Court must examine the nature of the underlying cause of action—BIPA—through the rules governing the broader statutory scheme—the Act. It must, in other words, look beyond the language of either statute.

## 3. Nature of the Injury

Whether an injury is compensable depends on whether the type of injury "categorically fits within the purview of the Act." *Folta*, 2015 IL 118070, ¶23. Relevantly, "The purpose of the Act is to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." *Mytnik v. Ill. Workers' Comp. Comm'n*, 2016 IL App (1st) 152116WC, ¶36 (citing *Orsini v. Industrial Com.*, 117 Ill. 2d 38, 44 (Ill. 1987)).

The problem can be approached first by looking to what the Act covers, and second to what, exactly, a BIPA violation is. Both analyses reach the same conclusion: a BIPA injury is not compensable within the meaning of the Act.

### i. Compensable Cases

Defendants are correct that the Act itself does not include a physical injury requirement. Half a century of cases have used various terms for it, but in sum, every type of injury held compensable under the Act includes some nexus to physical injury as a requirement of compensability.

The prototypical incident of workers' compensation is physical injury. This covers everything from discrete bodily injury, *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407, 409 (Ill. 1956), to repetitive stress from picking up items, *Mytnik*, 2016 IL App (1st) 152116WC, to an aircraft crash on a business trip, *Garland*, 2013 IL App (1st) 112121. Pure physical injury is largely self-explanatory, and not otherwise relevant in this case.

The Act's preclusion regime also extends somewhat beyond the employee in question. The exclusivity provisions will bar third-party claims against the employer that arise out of a workplace injury, such as loss of consortium by a spouse. *Bloemer v. Square D Co.*, 8 Ill. App. 3d 371, 373 (1st Dist. 1972). This is because the Act is designed to substitute for remedies "directly or indirectly resulting from injury to an employee," which includes certain derivative-type claims in its overall scheme. *Dobrydnia v. Indiana Group, Inc.*, 209 Ill. App. 3d 1038, 1042 (3d Dist. 1991).

Courts have also held psychological injuries are compensable, including the emotional shock of witnessing another's injury, even though the shock does not cause physical injury, *Pathfinder*, 62 Ill. 2d at 563; emotional distress caused by failure to render aid during a heart attack, *Collier*, 81 Ill. 2d at 237; and emotional distress caused by overworking in an environment of harassment, *Schroeder*, 2013 IL App (1st) 122483, ¶30.

Defendants attempt to circumvent this thread by citing to *Richardson*, which pronounces "the fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act." *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 548 (1st Dist. 1993). The citation is misplaced; the very next line cites *Pathfinder*, which held emotional shock compensable. *Id.* In this context, it is clear *Richardson* simply means that no bodily physical harm occurred, as opposed to mental harm. Indeed, *Richardson* concludes that the injury there—claimed civil rights violations, among others—stemmed from an argument at work about the employee's duties. That mental harm was sufficiently close to the employment to be compensable under the Act. *Id.* at 59.

*Richardson* is easily explained by later cases, which offer a retrospective gloss on the importance of *Pathfinder*. Psychological injury may be compensable under the Act, and comes in two types: "physical-mental," where a physical event causes mental injury; and "mental-mental," where a specific event causes mental, but not physical, injury. *City of Springfield v. Industrial Comm'n (B.K.)*, 291 Ill. App. 3d 734, 738 (4th Dist. 1997). *Pathfinder* held that "mental-mental" claims could be compensable, even without minor or ephemeral physical injury. *Id.* (discussing *Pathfinder*, 62 Ill. 2d at 564.

In all instances, and regardless of whether a claimant suffers gross bodily harm or psychological damages, which can include a physical or mental manifestation, there is always a physical component involved, even if indirectly. Thus, it can be said that, compensability is tied to the presence of "demonstrable medical evidence of injury." *Toothman v. Hardee's Food Sys.*, 304 Ill. App. 3d 521, 533 (5th Dist. 1999).

None of the types of cases, fact patterns, or causes of action held compensable under the Act include the sort of injury that BIPA presents. The Court does not consider this issue to be covered in any meaningful sense by appellate precedent. Indeed, the fact that nothing like a BIPA injury has previously been held compensable is a strong indication that it is not compensable.

### ii. The Nature of a BIPA Injury

From the other side of the inquiry, the Court can examine what a BIPA violation is. BIPA itself is a codification of an individual's "right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶33. It is, as the First District recently put, "a privacy rights law that applies inside and outside the workplace." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶30.[11]

The Court discusses the precise nature of a BIPA violation with respect to its privacy implications below. *See* Part IV.B *infra* (1-year statute of limitations). Without engaging in that analysis just yet, the broad strokes of the statute make clear enough that BIPA remedies a type of injury fundamentally different from anything within the Workers' Compensation Act's scope.

BIPA is a unique statute with a unique concern: biometric data. Biometrics are unique and immutable identifiers, and the ramifications of their use are not fully known. *See, e.g.*, 740 ILL. COMP. STAT. 14/5 (legislative findings). BIPA does not constrain the use of biometrics; as Defendants point out, their biometric timeclocks are perfectly legal, and such systems undoubtedly provide concrete benefits to both employer and employee in terms of ease of use, accuracy, and so forth. BIPA does not concern itself with these uses—at least, not directly.

Instead, BIPA protects biometrics by requiring the disclosure of certain types of information, creating a statutory regime under which individuals know, at all times, who has their biometric data, how it is stored, and what will happen to it once the individual's relationship with the collecting entity comes to an end. 740 ILL. COMP. STAT. 14/15. This scheme only functions if it applies to all biometric-collecting entities; because biometrics are unique, one collection exception is one exception too many. And by giving individuals information about how their data is collected, it permits them to make informed decisions about their biometrics. *See* Matthew B. Kugler, *From Identification to Identity Theft: Public Perceptions of*

---

[11] This language does not necessarily mean that the Workers' Compensation Act's exclusivity provision does not apply. As Defendants astutely point out, BIPA permits injunctive relief. 740 ILL. COMP. STAT. 14/20(4). Even if the Act barred damages claims, employees could still sue for purely injunctive relief.

*Biometric Privacy Harms*, 10 U.C. IRVINE L. REV. 107, 130–35 (2019) (lengthy discussion of legislative history and purpose of BIPA).

BIPA is not, in other words, aimed at employers in any meaningful way. It applies to payment systems, *see id.* at 130 (discussing Pay By Touch bankruptcy), amusement parks, *see Rosenbach*, 2019 IL 123186, ¶4, and employers equally. It applies both before and after the employment relationship: before, because it can be a condition of employment, which the potential employee can choose to accept or reject, *see* 740 ILL. COMP. STAT. 14/10; and after, because its data destruction requirements can trail for up to three years, *id.* 14/15(a).

BIPA creates a statutory cause of action to vindicate its protections. A violation of those protections alone, without actual damages, much less physical ones, creates a "real and significant" injury. *Rosenbach*, 2019 IL 123186, ¶34. The fact that the injury is complete *without* actual damages is a stark divergence from normal workers' compensation claims, which by definition seek compensation.[12] A BIPA injury is solely a legal injury, without any physical component.[13]

To the extent employers run afoul of BIPA's requirements, the alleged violations are not intrinsically connected to the employment by anything more than chance. Use of biometrics in timeclocks does not convert a BIPA claim to a wage or hours claim. *Liu*, 2019 IL App (1st) 182645, ¶30. Likewise, use of biometrics in the workplace does not convert a BIPA claim to anything reasonably within the scope of workers' compensation, much less categorically so as the caselaw demands.[14]

BIPA is thus similar to a spoliation claim: spoliation claims are not compensable under the Act, even if the underlying injury triggering the spoliated litigation *was* covered by the Act. *Schusse*, 334 Ill. App. 3d at 969 (reviewing caselaw).

Because BIPA injuries do not categorically fit within the purview of the Workers' Compensation Act, they are not compensable under the Act. Because BIPA injuries are not compensable under the Act, the fourth exception to the exclusivity provision is satisfied, and the Act will not bar the claim.

---

[12] At least one court has founded its ruling on this distinction alone. *Carrasco, supra* note 5, at p.2.
[13] The fact that the injury accrues by way of an employee touching a timeclock is both *de minimis* and irrelevant. Biometrics can be collected remotely, as exemplified by facial recognition technology. *See, e.g., Patel v. Facebook, Inc.*, 932 F.3d 1264, (9th Cir. 2019) (facial recognition class settlement).
[14] Plaintiffs point to a number of foreign cases holding that similar privacy and statutory regulation schemes are not preempted by other workers' compensation acts. *See, e.g., Marino v. Arandell Corp.*, 1 F. Supp. 2d 947, 949–50 (E.D. Wis. 1998) (privacy statute); *Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 325 (Ala. 1989) (invasion of privacy); *Vainio v. Brookshire*, 258 Mont. 273, 280 (Mont. 1993) (emotional pain and suffering). None of these are particularly good comparators, as each state's workers' compensation exclusivity provision is drafted slightly differently. Yet it is worth noting that no one else considers this type of injury compensable, as further evidence of its categorical exclusion from the realm of workers' compensation generally.

## IV. Statute of Limitations

There are two potentially applicable statutes of limitation: Section 13-201, which provides a one-year period for privacy claims involving publication, and Section 13-202, which applies a two-year period to penal statutes and personal injury claims. BIPA protects privacy by controlling information, and it is the unique nature of that control which gives rise to its unique claims and cause of action.

Section 13-201 does not apply, because none of the claims actually pled involve publication. Furthermore, even if they somehow did, the Court is unconvinced that the "dissemination" language of BIPA is sufficient to constitute "publication" within the meaning of Section 13-201.

Section 13-202 does not apply because BIPA is remedial, not penal. The Supreme Court has laid out a clear test, which the statute does not pass. Furthermore, recent caselaw on the Telephone Consumer Protection Act provides a useful analogy. Finally, BIPA certainly does not present a personal injury.

Because the five-year statute of limitations applies, questions concerning claim accrual are moot, and the Court declines to address them.

### A. Selecting a Statute

BIPA does not contain a statute of limitations. Where a cause of action does not identify a limitations period, it must be determined as a matter of law. *Travelers Cas. & Sur. Co. v. Bowman*, 229 Ill. 2d 461, 466 (Ill. 2008). Section 13-205 provides the default rule: "all civil actions not otherwise provided for" are subject to a five-year statute of limitations. 735 ILL. COMP. STAT. 5/13-205. The question then becomes whether another limitations period applies.

Where multiple statutes of limitation apply, the correct statute is determined by—once more—the nature of the injury. *Id.* at 466–67 (quoting, among others, *Armstrong v. Guigler*, 174 Ill. 2d 281, 286–87 (Ill. 1996)). Specifically, this inquiry looks to the legal injury itself, rather than the facts from which it sprung, *id.* at 466 (citing *Armstrong*, 174 Ill. 2d at 286–87), and to the liability imposed, rather than the relief sought, *id.* at 467 (citing *Armstrong*, 174 Ill. 2d at 291). If multiple statues should apply, the more specific statute takes precedence. *Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill. 2d 190, 196 (Ill. 1992) (citations omitted).

The Court notes that this is an inquiry of law, not of public policy. *See Bowman*, 229 Ill. 2d at 466–467. Defendants do not explicitly make a policy argument, but they do discuss the policy ramifications of the various competing options.[15] The correct statute of limitations—and, perhaps more specifically, the determination of when each claim accrued, and whether the alleged injuries are singular, serial, or continuous—has a tremendous impact on Defendants' liability.

---

[15] In this respect, they differ from the defendants in *Robertson v. Hostmark*, who explicitly urged application of the shortest possible limitations period on policy grounds. *Robertson I, supra* note 5, at pp. 3–4. Their argument was soundly rejected, and in the dozen written opinions addressing the issue since, the Court found no indication that any other defendants tried to renew it.

The questions of policy and damages Defendants raise are extremely important ones, but they are questions for another day. The issue before the Court is one of the statute of limitations, not of what may come next.

## B. Section 13-201: Privacy Claims

The first of two alternative statutes of limitation is Section 13-201:

> Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

735 ILL. COMP. STAT. 5/13-201. Defendants offer substantially more specificity in their argument, but the core premise is straightforward: BIPA is primarily concerned with privacy, and so the statute of limitations for privacy claims should apply. Privacy is, after all, in the name. *See, e.g., Rosenbach*, 2019 IL 123186, ¶34 (discussing BIPA's role in protecting privacy rights).

The inquiry here must be specific, because it looks to the nature of the legal injury itself, and the basis for liability. BIPA provides a single cause of action in Section 20, which provides that a party may recover for negligent violations, intentional or reckless violations, fees and costs, and injunctive relief. 740 ILL. COMP. STAT. 14/20(1)–(4). Underlying this single cause of action, BIPA provides five separate proscriptions in Section 15: five discrete violations which each give rise to liability. *Id.* § 14/15(a)–(e).

Each of these violations is a separate injury, and the Court finds it beneficial to analyze each separately. Crucially, Section 13-201 does not apply to privacy claims generally. Rather, it applies to privacy actions involving *publication.* Because none of the pled claims involve publication, Section 13-201 does not apply.

## 1. Section 15(a) Written Policy Claims

Section 15(a) requires an entity subject to BIPA to develop and publicly promulgate a written policy establishing a retention schedule and destruction policy for all collected biometric data. 740 ILL. COMP. STAT. 14/15(a). It requires that biometric data be destroyed within the earlier of 3 years of the entity's last interaction with the individual from whom information was collected, or when the purpose for collection of such information is satisfied.

The plain language of Section 13-201 is clear and unambiguous: it only governs (a) slander, (b) libel, or (c) "publication of matter violating the right of privacy." 735 ILL. COMP. STAT. 5/13-201. BIPA does not present either a slander or libel claim. The only way Section 13-201 could apply to a Section 15(a) claim, then, is under that third category.

Courts have interpreted Section 13-201's third class of torts to mean that the statute only applies to "privacy torts involving publication." *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (2d Dist. 1999). *See id.* at 1035 (plain

language of statute controls, and where tort was neither enumerated by 13-201 nor involved publication, 13-201 did not apply).

Publication is not an element of a Section 15(a) claim. Indeed, it is hard to see how it could be. Section 15(a) requires that entities develop a biometrics policy "made available to the public." 740 ILL. COMP. STAT. 14/15(a). It says nothing about individuals, much less private information. Section 13-201 cannot apply.

## 2. Section 15(b) Disclosure Claims

Section 15(b) requires an entity to take three actions prior to collecting biometric data: (1) disclose that biometrics are being collected, (2) disclose the purpose of the collection and duration of retention, and (3) obtain a written release for such collection. 740 ILL. COMP. STAT. 14/15(b).

Publication is not an element of a Section 15(b) claim. And, as with Section 15(a) claims, it is hard to see how publication would fit in here, either. The allegations are that Defendants use biometric timekeeping systems for every employee, and BIPA permits them to condition employment on executing a written release. 740 ILL. COMP. STAT. 14/20. This entails that all employees either did, or did not, receive BIPA disclosures or execute BIPA waivers. Thus, the fact that any given employee received a disclosure or executed a waiver would be no more private than the fact of their employment in the first place. Once again, Section 13-201 cannot apply.

## 3. Section 15(d) Dissemination Claims

Section 15(d) provides that no entity in possession of biometrics may "disclose, redisclose, or otherwise disseminate" those biometrics unless one of four exceptions applies, under which the disclosure is (1) consented to, (2) necessary to complete a financial transaction, (3) required by law, or (4) pursuant to warrant or subpoena. 740 ILL. COMP. STAT. 14/15(d).[16]

The bulk of Defendants' argument on Section 13-201 focuses on the ramifications of Section 15(d)'s disclosure language, and whether dissemination of biometrics would cause the tort to fall within the scope of Section 13-201's "publication" language.[17]

These arguments are particularly curious because Plaintiffs do not raise a Section 15(d) claim. Both Complaints acknowledge the possibility that further dissemination may have occurred, and both Complaints name NCR Corporation as a respondent in discovery, in the belief that NCR may possess information to identify additional entities that may have possessed biometric data. The class definitions are broad enough to encompass any claim under Section 15, if one were

---

[16] Section 15(c) prohibits profiting by way of biometrics, and is not implicated here, or otherwise suggested by the employment context. 740 ILL. COMP. STAT. 14/15(c). Section 15(e) requires that the information be stored securely. *Id.* § 14/15(e).

[17] The Court uses "dissemination" as shorthand to indicate disclosure, redisclosure, or dissemination within the meaning of Section 15(d). These are three different terms, but for the present discussion, the differences are irrelevant.

made. But nowhere do the Complaints allege that Defendants disseminated biometrics.[18] At the risk of stating the obvious, Section 13-201 does not apply to a claim unpled.

### 4. Section 15(d)'s Implications

Defendants attempt to salvage their core publication argument by making it anyway, arguing that the Section 15(d) analysis controls, regardless of whether a claim is explicitly made or not. The Court is not convinced. First, Defendants' statutory interpretation would wag the dog by the tail, and is not particularly logical. Second, even if Section 15(d) were dispositive, "dissemination" under BIPA does not equate to "publication" so as to bring any BIPA claim within the scope of Section 13-201.

### i. Connecting the Sections

Defendants argue that Sections 15(b) and 15(d) are "on equal footing." They point out that *Rosenbach* characterizes a Section 15(b) violation as a real and significant injury. 2019 IL 123186, ¶34. And, BIPA itself connects all four types of Section 15 violation to the same statutory damages. 740 ILL. COMP. STAT. 14/20(1). Defendants charge that, when *Rosenbach* made the sections "functionally equivalent," the Supreme Court necessarily entailed that all four be lockstepped to Section 13-201's one-year limitations period.

Bluntly, *Rosenbach* said no such thing. It held the Section 15(b) injury real and significant, because of its privacy implications. The only claim on the table in *Rosenbach* was a Section 15(b) claim. 2019 IL 123186, ¶11. Unsurprisingly, it did not discuss Section 15(d), much less equivocate it to anything. Its discussion of the privacy implications of a Section 15(b) claim do not change the fact that Section 13-201 is still contingent on publication—privacy alone is insufficient.

Furthermore, Defendants' own argument is self-defeating. Even if Sections 15(b) and 15(d) were "functionally equivalent"—an interpretation contrary to the plain language of the statute—there is no logical reason why that would entail lockstepping them both to the shorter statute of limitations. Certainly the Court can see none, and Defendants have neither tried to explain nor cited authority in support of their suppositions.

Defendants' attempt to read an illogical web of statutory dependencies into a decision silent on the issue necessarily fails.

---

[18] As Plaintiffs note in their briefing, if they subsequently discovered information sufficient to ground a Section 15(d) claim, the discovery rule might be implicated, which is normally a question of fact not suitable for resolution on a Motion to Dismiss. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 153–54 (Ill. 1985). *See also Heard*, *supra* note 5, at p. 10 (denying motion to dismiss a Section 15(d) claim, based on factual disputes surrounding timing of when and how frequently dissemination occurred).

## ii. Dissemination and Publication

At the core of it, Defendants argue that dissemination under Section 15(d) necessarily entails "publication" within the meaning of Section 13-201. They argue, among other things, that "publication" means any dissemination of private information, and by alleging that Defendants collected fingerprints, Plaintiffs have alleged that their fingerprints have been "published" into the timekeeping systems. Under this logic, because all biometric data must be collected, if collection is publication, then any BIPA claim necessarily entails publication, and triggers Section 13-201.

In order for Section 13-201 to apply, publication must be an element of the claim. *Benitez*, 305 Ill. App. 3d at 1034. Publication at common law generally means disclosure to the public at large. *Cordts v. Chi. Tribune Co.*, 369 Ill. App. 3d 601, 607 (1st Dist. 2006). Publication may be satisfied where the disclosure is to a smaller group of persons with a "special relationship" to the subject. *Id.* at 607–08 (quoting *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 980 (1st Dist. 1990) (itself quoting RESTATEMENT (SECOND) OF TORTS, §652(d), cmt. a (1977))).

Defendants pin their argument on the smaller group theory, citing *Popko* to support their assertion that publication can be satisfied by any communication to a third party, even within a corporation. *Popko v. Cont'l Cas. Co.*, 355 Ill. App. 3d 257, 264–65 (1st Dist. 2005). Because other employees were presumably involved with the collection of biometric data, Plaintiffs' biometrics would have been published to those other employees.

Setting aside the fact that these facts are themselves far afield of the Complaints—which do not, it is worth repeating, raise any sort of Section 15(d) claim—*Popko* is not compelling. Its discussion of publication is in the context of defamation, which has a much lower threshold for publication. The Restatement of Torts—which Illinois courts have explicitly adopted for defamation law, *Popko*, 355 Ill. App. 3d at 266—lays out the distinction quite clearly. Communication to a single person is sufficient publication for defamation. RESTATEMENT (SECOND) OF TORTS, §577, cmt. b (1977). But in the privacy context generally, publication must be to the public at large. *Id.* §652D, cmt. a (explicitly distinguishing defamation publicity).

Defendants' other authority is *Blair*, in which the court held Section 13-201 applicable to the Right of Publicity Act, which did not contain a statute of limitations. *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323 (2d Dist. 2006). The Right of Publicity Act did not, however, spring into the world fully formed. Rather, it replaced common-law appropriation of likeness, which was unquestionably subject to Section 13-201. *Id.* at 322–23. *Blair* simply carried through to the statute what had been the common-law rule, and its discussion is not particularly relevant here.

BIPA is a freestanding cause of action, not connected to any common-law rights that came before, and without a preexisting statute of limitations to draw on. Through the lens of publication in the privacy tort context generally, it is clear a Section 15(d) claim, which entails disclosure, redisclosure, or other dissemination of biometrics, does not necessarily create a "publication" within the meaning of Section

13-201. It is certainly possible that a Section 15(d) claim *could* be coupled by publication; for instance, an entity could run a full-page selection of fingerprints in the *Chicago Tribune*.[19] But the element of "dissemination" under Section 15(d) is not tantamount to "publication." And because publication is not an element of the claim, *see Benitez*, 305 Ill. App. 3d at 1034, Section 13-201 does not apply.

## C. Section 13-202: Penal Statutes

The second of two alternative statutes of limitation is Section 13-202. It is lengthy, but the operative language is brief:

> Actions . . . for a statutory penalty . . . shall be commenced within 2 years next after the cause of action accrued . . . .

735 ILL. COMP. STAT. 5/13-202. Unlike the Section 13-201 analysis, which looked at each claim individually, the determining factor here is whether BIPA is penal, remedial, or both. Consequently, the focus is not on the specific claims of Section 15, but on the relief permitted under Section 20. 740 ILL. COMP. STAT. 14/20.

### 1. The *Landis* Test

Determining whether a statute is penal for the purposes of Section 13-202 is a three-part test. A penal statute "must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 13 (Ill. 2009) (citing *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738 (2d Dist. 1982)). A statute must meet all three requirements to be considered penal. *Id.* at 15.

The first of the three requirements is satisfied, because BIPA imposes automatic liability. Indeed, *Rosenbach* confirms that the injury is complete and significant at the point in time when the statute is not complied with. 2019 IL 123186, ¶34.

The second of the three requirements is not satisfied. BIPA does not set forth a predetermined amount of damages. Rather, it provides that an injured party may recover the *greater* of liquidated damages, or actual damages. 740 ILL. COMP. STAT. 14/20(1) (for a negligent violation, $1,000), *id.* § 14/20(2) (for an intentional or reckless violation, $5,000). *Rosenbach* held that actual damages need not be stated to sustain a claim, 2019 IL 123186, ¶36, and indeed the Court suspects that most BIPA cases currently pending claim liquidated, rather than actual, damages. But the bare fact remains that the damages provision is not predetermined, but rather depends on the injury suffered.

The third of the three requirements is not satisfied for much the same reason. BIPA permits the recovery of liquidated *or* actual damages. A claim for actual

---

[19] And, in such a situation, application of Section 13-201 might well be reasonable. *See Webb v. CBS Broad. Inc.*, 2009 U.S. Dist. LEXIS 38597, at **7–8 (N.D. Ill. 2009) (time-barring injury based on publication, but permitting claim against the content itself to stand).

damages would of course be with regard to the actual damages suffered. Notably, the *Landis* test does not discuss what any given plaintiff has pled. Rather, it looks to the statute itself, and what is *possible* under the statute. Because it is possible that a plaintiff's actual damages exceed the liquidated damages, the liability imposed is related to the damages suffered, and this requirement fails. *See also Sternic v. Hunter Props., Inc.*, 344 Ill. App. 3d 915, 918–19 (1st Dist. 2003) (where statutory liability was the greater of actual damages or two months' rent, because the fixed amount was contingent on actual damages, it was related to actual damages).

Because the second and third prongs of the *Landis* test are not met, BIPA is not a penal statute. Section 13-202 cannot therefore apply.

### 2. *Standard Mutual* and the TCPA

Both parties discuss *Standard Mutual*, a recent Illinois Supreme Court case discussing whether the Telephone Consumer Protection Act was penal or remedial, and concluding that it was remedial. *Std. Mut. Ins. Co. v. Lay*, 2013 IL 114617. BIPA and the TCPA are quite similar mechanically, and the analogy is well-taken. *Standard Mutual* is an extraordinarily good comparator, and an extended discussion is appropriate.

*Standard Mutual* originated as an insurance dec action. The defendant, Lay, engaged a fax service to send its ads to five thousand Illinois fax machines. 2013 IL 114617, ¶4. Unbeknownst to Lay, that was a TCPA violation, and a class action lawsuit soon followed, which settled for $1.7 million. *Id.* ¶9. Lay tendered the defense to its insurer Standard Mutual, which defended under a reservation of rights. *Id.* ¶¶7, 11. Standard Mutual filed its declaratory action on a theory that the TCPA was a punitive statute, and punitive damages are uninsurable as a matter of law. *Id.* ¶11. Trial and appellate courts agreed, and thus the issue proceeded to the Illinois Supreme Court. *Id.* ¶16.

The TCPA prohibits, among other things, the unsolicited sending of faxes. 47 U.S.C. §227(b)(1)(C). It contains a private right of action, under which a person may seek injunctive relief and file an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* §227(b)(3)(B). Willful or knowing violations have a multiplier, under which damages may triple. *Id.* §227(b)(3).

The *Standard Mutual* court founded its analysis on the *Landis* test and its three factors. 2013 IL 114617, ¶30 (citing *Landis*, 235 Ill. 2d at 12–13). Examining the purpose of the TCPA, it held in no uncertain terms that the statute was remedial, not penal. *Id.*[20]

Discussing the purpose of the TCPA, the *Standard Mutual* court noted that, though a single fax was a minor harm, the aggregate violation was compensable, and represented by a $500 sum per instance. 2013 IL 114617, ¶31. That $500

---

[20] Thus, Defendants' critique that *Standard Mutual* was an insurance dec case, rather than a statute of limitations case, falls flat. Regardless of the reason why, it engaged in the exact same analysis a Section 13-202 statute of limitations inquiry would mandate.

amount was intended as, among others, an incentive for private enforcement, because actual losses would be trivial. *Id.* at ¶32. Whether viewed "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals." *Id.* This took the liquidated damages provision firmly out of the realm of the punitive.

Even the treble damages provision did not change the outcome. By analogy to the Illinois Consumer Fraud Act, because treble damages were one part of the TCPA's broader regulatory scheme, it was a supplemental aid to enforcement, not a punitive provision. *Id.* at ¶33 (quoting *Scott v. Association for Childbirth at Home, Int'l*, 88 Ill. 2d 279, 288 (Ill. 1981)).

The analogies to BIPA are self-evident, and laid out in some detail by Plaintiffs in their briefing. The key operative provisions of each statute are remarkably similar: TCPA permits recovery of "actual monetary loss from such a violation, or . . . $500 in damages for each such violation, whichever is greater," with treble damages on willful or knowing violations, while BIPA permits "liquidated damages of $1,000 or actual damages, whichever is greater," with liquidated damages of $5,000 for intentional or reckless violations. *Compare* 47 U.S.C. §227(b)(3)(B) *with* 740 ILL. COMP. STAT. 14/20(1), (2).

It is clear that, by permitting recovery of liquidated *or actual* damages, BIPA plants itself firmly as remedial, rather than penal. Indeed, other statutes that regulate through private enforcement often share the "greater-of" model by offering liquidated or statutory damages. These include the Illinois Cable Privacy Act, which permits actual, statutory, and punitive damages, 720 ILL. COMP. STAT. 5/16-18(h)(2)(C), 5/16-18(h)(2)(D), 5/16-18(h)(3). *see Joe Hand Promotions, Inc. v. Mooney's Pub, Inc.*, 2014 U.S. Dist. LEXIS 134947, at **20–21 (C.D. Ill. 2014); portions of the Chicago Residential Landlord and Tenant Ordinance, Chi. Muni. Code §§ 5-12-110(e), 5-12-150 (hereafter "CMC"), *see Sternic*, 344 Ill. App. 3d at 918–19 (RLTO provisions not penal), and the AIDS Confidentiality Act, 410 ILL. COMP. STAT. 305/13(1)–(2).[21]

*Rosenbach* discusses the purpose of BIPA at some length. It concludes that private enforcement of BIPA for statutory violations alone is a necessary component in the statutory scheme to provide "the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." 2019 IL 123186, ¶37. BIPA's purpose, and the liquidated damages it provides, "clearly serve[] more than purely punitive or deterrent goals." *Standard Mutual*, 2013 IL 114617, ¶32. BIPA is remedial.

---

[21] Plaintiffs' citation to *Scott* for the proposition that ICFA is remedial is unhelpful. *Scott*, 88 Ill. 2d at 288. ICFA permits of private enforcement only for actual damages. 815 ILL. COMP. STAT. 505/10a(a). The *Attorney General* may additionally seek various civil penalties. *Id.* §505/7(b)–(c). But the AG is not subject to a statute of limitations anyway, so the point is somewhat moot. *Illinois v. Tri-Star Indus. Lighting, Inc.*, 2000 U.S. Dist. LEXIS 14948, **7–8 (N.D. Ill. 2000).

### 3. *Namur* and Split Identity

Defendants counter with *Namur*, a 1998 case discussing the Chicago Residential Landlord and Tenant Ordinance. *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007 (1st Dist. 1998). In *Namur*, the court considered two RLTO provisions. One provided for damages equal to twice the security deposit, plus five percent. CMC § 5-12-080(f). The other grants a flat $100 for failure to tender an RLTO summary document at renewal. CMC §5-12-170. *Namur* noted that some portions of the RLTO were penal, but the statute also had some remedial purposes. 294 Ill. App. 3d 1010–11 (citations omitted).

*Namur* held that both specific provisions at issue there were penal: the one specified a formula to calculate damages, and the other was a flat charge. *Id.* at 1011. The fact that damages were calculated depending on the security deposit was irrelevant, because the security deposit was not lost or seized in any way, and did not itself represent damages. It simply provided a way to calculate the number. *Id.*

Defendants posit that Plaintiffs paint with too broad a brush: *Namur* shows that it is possible for a statute to have parallel purposes, penal and remedial alike, and that it is possible to parse out the statute with more granularity than Plaintiffs propose. Curiously, Defendants do not actually discuss what such a split analysis would look like.

On *Namur*'s analysis, the Court does not believe BIPA has such a split identity. Even if it did, *Namur* itself does not suggest that the relevant portions would be penal. And finally, it seems evident that, to whatever extent *Namur* set out a flat rule, it has since been overruled by implication of *Landis* and *Standard Mutual* alike.

First, it is worth noting that *Namur* addressed the RLTO, a sprawling collection of provisions and causes of action. In the RLTO context, cases address the penal-remedial distinction on a section-by-section basis. *Sternic*, 344 Ill. App. 3d at 918 (citing *Namur*). So, while *Namur* parses out the distinctions between sections within a much larger statute, the cause of action remains the smallest unit of analysis. BIPA, by contrast, contains only one cause of action: Section 20. *Namur* never proposed to split up a single cause of action into penal and remedial portions, and the Court sees no reason to do so here.

Second, the ordinances at issue in *Namur* provided for a formula and a flat fine. The formula there was pegged to the security deposit, but had no connection to actual damages. 294 Ill. App. 3d 1011. And the flat fine was exactly that. *Id.* Whereas the RLTO did not refer to or account for actual damages BIPA does, by offering plaintiffs the choice. *Namur*'s analysis simply does not apply.

Third and finally, Defendants' quotation of *Namur* suggests they mean to extract a rule that statutes "are penal because they specify either the amount of damages that can be awarded for violations or the formula by which the amount of damages is to be calculated." *Id.* at 1011. And BIPA sets forth, among other things, fixed liquidated damages. 740 ILL. COMP. STAT. 14/20(1)–(2). To the extent *Namur* may have articulated such a rule—and the Court is unconvinced that it did—it is clearly no longer good law. *Landis* makes clear that the *absence* of actual damages

is a defining factor under the third prong. 235 Ill. 2d at 14. And *Standard Mutual*, of course, holds the TCPA and its alternative damages calculation remedial. 2013 IL 114617, ¶32.

Under the *Landis* test, BIPA is remedial. Such a characterization accords with the conclusion of *Standard Mutual*, and is unchanged by any aspect of *Namur*.

### D. Section 13-202: Personal Injury

Section 13-202 is a large provision, and Defendants argue that another portion of its language is also relevant here:

The second of two alternative statutes of limitation is Section 13-202. It is lengthy, but the operative language is brief:

> Actions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . .

735 ILL. COMP. STAT. 5/13-202. Defendants advance this argument only briefly, abandoning it on Reply and at hearing, but it bears brief discussion. Because Plaintiffs allege that Defendants negligently violated BIPA, and that the negligent acts caused Plaintiffs injury, it therefore alleges a "personal injury (negligence) claim" subject to Section 13-202's "injury to the person" language.

The flaws in such a position are self-evident, perhaps nowhere more than the bare fact that BIPA has nothing to do with personal injury. *See also* Part III.C *supra* (discussing, at length, how BIPA *differs* from personal injury claim).

More to the point, Section 13-202's "personal injury" language is even narrower than the compensability analysis under the Workers' Compensation Act. "Illinois courts uniformly have interpreted the language in section 13-202 narrowly . . . . In other words, contrary to its express language, section 13-202 does not extend to all personal injury claims." *Smith v. National Health Care Services*, 934 F.2d 95, 97–98 (7th Cir. 1991). This is in part because Section 13-202 lists a great number of torts, the enumeration of which cuts back the scope of "personal injury." *See Berghoff v. R.J. Frisby Mfg. Co., Div. of Western Capital Corp.*, 720 F. Supp. 649, 653 (N.D. Ill. 1989).

BIPA does not present—and, barring some sort of freak electrical short in a fingerprint scanner, appears largely incapable of presenting—a personal injury claim. Section 13-202 does not apply.

Because neither Section 13-201 nor Section 13-202 applies, BIPA is a civil action not otherwise provided for. *See* 735 ILL. COMP. STAT. 5/13-205. Pursuant to Section 13-205, it is subject to a five-year statute of limitations. All Plaintiffs' claims are timely.

Page **24** of **26**

## E. Accrual of Claims

The final arguments concern when, exactly, the various Plaintiffs' claims accrued. The Court's prior rulings make this issue moot, but the Court sketches the argument here for completeness.

Defendants, quoting familiar claim-accrual language, assert that Plaintiffs' claims accrued when they knew or reasonably should have known of their injury, and that it was wrongfully caused. *E.g., Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (Ill. 1981) (citations omitted). Plaintiffs, just like Defendants, are presumed to know the law. *Jones*, 2013 IL App (1st) 122437, ¶22. Therefore, argue Defendants, if Plaintiffs indeed started working, had their biometric data collected, but did not receive sufficient disclosures, they should have known at that time that a BIPA claim had accrued.[22]

Plaintiffs counter with two theories. First, the violation can be viewed as s series of independent acts: each time a finger was scanned, a new BIPA claim accrues. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 199 Ill. 2d 325, 349 (Ill. 2002). Thus, though initial violations may have occurred outside the statute of limitations, more recent ones are still timely.

Second, because each collection occurs within the context of continuous employment, the BIPA violation could be viewed as a continuing injury. *See Taylor v. Bd. of Educ.*, 2014 IL App (1st) 123744, ¶46. Under such a theory, the statute of limitations is held in abeyance, and only starts to run when the course of conduct comes to an end.[23]

Here, Plaintiff Owens started her employment in 2014, and filed less than four years later; Plaintiff Garcia started her employment in 2016, and filed just over two years later; Plaintiff Young started his employment in 2017, just over a year before filing. Because the Court has held that BIPA is subject to a five-year statute of limitations, all potential claims are timely, even if the claims accrued on the date employment began. It is therefore not necessary to address the issue of claim accrual at this time.[24]

---

[22] It is unclear how, if at all, this analysis would apply to a Section 15(d) dissemination claim, if one were pled. *See* Part IV.B.3 *supra* (no such claims made). Presumably, the discovery rule would be implicated. *See* note 18 *supra*.

[23] The Court observes that its colleagues have favored the second theory, that of the continuing tort. *See Cortez, supra* note 5, at pp 7–9; *Woodard, supra* note 5, at pp. 14–15. *See also Heard, supra* note 5, at p. 10 (continuing tort presents question of fact). *But see Robertson I, supra* note 5, at pp. 4–5 (claim accrues at first scan).

[24] The Court recognizes that whether BIPA presents a single continuing injury or a series of repeated injuries has tremendous implications for Plaintiffs' potential recovery—to say nothing of Defendants' exposure. Because resolution of the question is not necessary for the pending motion, the Court declines to do so in this particular procedural posture.

## F. Further Proceedings

The Court is aware that a number of the questions treated above are pending before other, superior courts.[25] Because this case was briefed, argued, and taken under advisement prior to those developments, the Court thought it appropriate to dispose of the pending matters.[26]

To the extent further developments may affect these cases, the Court has no doubt that the appropriate parties will file appropriate motions. In light of the constellation of external litigation, however, the Court will stay Defendants' responsive pleading until the next status date, when the parties can advise as to their intended courses of action.

## V. Orders

Defendants' Motion to Dismiss is denied in its entirety.

Defendants' obligation to file a responsive pleading is stayed until the next status in this matter. At that time, the Court anticipates setting a pleadings deadline, unless the parties request that proceedings be further stayed.

This matter is set for status on **Friday, June 26, 2020, at 10:00 a.m.** via teleconference. The Court will contact the parties in advance of the hearing and provide specific hearing information.

Chambers staff will email a copy of this Order to the parties.

ENTERED:

ENTERED
Judge Anna Loftus
JUN 08 2020
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

/s/ *Anna M. Loftus*

Judge Anna M. Loftus, No. 2102
June 8, 2020

---

[25] The Workers' Compensation Act issue has been certified to the First District in *McDonald II*, and to the Third by *Marion II*. The Section 13-201 one-year statute of limitations has been certified to the First District by *Tims II* and *Cortez*, and to the Third by *Marion II*. The Section 13-202 two-year statute of limitations has been certified to the Third District by *Marion II*. And one form of the accrual question has been certified to the First District by *Cortez*, while another certification is imminent in *Robertson III*. The Court is without specific knowledge of the status of those various appeals.
[26] The Court notes that this is one of three concurrently issued written opinions addressing BIPA. The other two are *Owens v. Wendy's International*, 18 CH 11423 (Cir. Ct. Cook Co., June 8, 2020), which is substantially similar to this one, and *Wells v. Relish Labs*, 19 CH 00987 (Cir. Ct. Cook Co., June 8, 2020), which treats the same issues but is not as closely related.

FILED DATE: 1/27/2020 4:52 PM     2019CH03522

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

DAVID A. CHAVEZ, individually and on
behalf of all others similarly situated,

               Plaintiffs,

               v.

TEMPERATURE EQUIPMENT CORP.,

               Defendant.

Case No. 19 CH 2538

Judge Moshe Jacobius

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's
Complaint under 735 ILCS 5/2-619.1.[1] The Court has reviewed the foregoing Motion, Plaintiff's
Response, and Defendant's Reply in Support. The Court has also reviewed the relevant statutory
and case law.

### I.    BACKGROUND

Plaintiff, David Chavez, began working for Defendant in June of 2012. (Complaint, ¶ 18.)
During the course of Plaintiff's "onboarding process," Defendant required Plaintiff to place his
fingers on a fingerprint scanner, at which point Defendant scanned and collected, and stored in an
electronic database, digital copies of Plaintiff's fingerprints. (*Id.* at ¶ 19.) Plaintiff worked for
Defendant until March of 2017. (*Id.* at ¶ 20.) Plaintiff alleges that, during his employment tenure,
Plaintiff was required to place his finger on a fingerprint scanner, which scanned, collected, and
stored his fingerprint each time he "clocked" in and out as part of the timekeeping system. (*Id.*)

---

[1] Also before the Court is Plaintiff's Motion to Disclose Newly Issued Case as Supplemental Authority.
Plaintiff seeks to disclose as supplemental authority the July 31, 2019, Memorandum Opinion and Order
issued by Judge Neil Cohen in *Robertson v. Hostmark Hospitality Grp.*, Case No. 2018-CH-5194, 2019 Ill.
Cir. LEXIS 119 (Cir. Ct. Cook Cty. July 31, 2019). The Court is aware of Judge Cohen's well-considered
opinion and finds it persuasive.

Defendant's fingerprint-matching technology would compare Plaintiff's scanned fingerprint against the fingerprint previously stored in Defendant's "fingerprint database," and then grant Plaintiff access to Defendant's facility in order to begin work. (*Id.*)

According to Plaintiff, Plaintiff never consented, agreed or gave permission to Defendant for the collection or storage of his biometric data. (*Id.* at ¶ 21.) Defendant never provided Plaintiff with the requisite statutory disclosures or an opportunity to prohibit or prevent the collection, storage, or use of his biometric identifiers or biometric information. (*Id.* at ¶ 23.) Defendant additionally failed to provide Plaintiff with a retention schedule and/or guidelines for permanently destroying his biometric identifiers and biometric information. (*Id.* at ¶ 25.)

Plaintiff filed his two-count Class Action Complaint on February 26, 2019. In Count I, Plaintiff alleges:

- Defendant systematically collected, used, and stored Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

- Upon information and belief, Defendant disclosed Plaintiff's and the Class' biometric identifiers and biometric information to at least one third-party vendor.

- Defendant failed to properly inform Plaintiff or the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or otherwise obtained, nor did Defendant inform Plaintiff or the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

- Defendant does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff or the Class members, as required by BIPA.

- Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class' biometric data and has not and will not destroy Plaintiff's or the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of personnel's last interactions with the company.

2

**A92**

(Complaint, ¶¶ 38, 39, 40, 41, 42.) Plaintiff alleges each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff's and/or the Class' biometric identifiers and biometric information as described in the Complaint constitutes a separate violation of BIPA. (*Id.* at ¶ 44.)

In Count II, Plaintiff brings a claim for negligence. Plaintiff alleges that Defendant owed Plaintiff and the Class a duty of reasonable care in the collection and use of Plaintiff's and the Class' biometric data. (*Id.* at ¶ 47.) Plaintiff further alleges that Defendant owed Plaintiff and the Class "a heightened duty—under which it assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm—because of the relationship of the parties." (*Id.* at ¶ 48.) According to Plaintiff, Defendant breached its duties by:

- Failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class' biometric identifiers and biometric information.

- Failing to properly inform Plaintiff and the Class in writing of the specific purpose or length for which their fingerprint information was being collected, stored, and used.

- Failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class' fingerprint data.

(*Id.* at ¶¶ 49, 50, 51, 52.) Plaintiff further claims that Defendant has not destroyed and will not destroy Plaintiff's or the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied within three years of individuals' last interactions with the company. (*Id.* at ¶ 52.) Plaintiff alleges that these violations "have raised a material risk that Plaintiff and the Class' biometric data will be unlawfully accessed by third parties," and that "Defendant's breach of its duties proximately caused and continues to cause an invasion of Plaintiff's and the Class' privacy." (*Id.* at ¶¶ 53, 54.) Plaintiff therefore seeks a declaration that Defendant's conduct constitutes negligence.

For both counts, Plaintiff seeks to represent all "individuals who, while residing in the State of Illinois, had their fingerprints collected, captured, received, or otherwise obtained, and/or

3

A93

stored" by Defendant. Defendants now move to dismiss Count I of Plaintiff's Complaint pursuant to section 2-619 because it is barred by a one-year statute of limitations for privacy claims. Defendants also move to dismiss Count II of Plaintiff's Complaint pursuant to section 2-615 because it is duplicative of Count I because it arises out of the same operative facts and seeks recovery for the same alleged wrongful conduct.

## II.    LEGAL STANDARD

Section 2-615 of the Illinois Code of Civil Procedure (the "Code") allows a defendant to challenge the legal sufficiency of a complaint. *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 499 (2009). A motion to dismiss under Section 2-615 does not raise affirmative defenses; rather, it only alleges defects on the face of the complaint. *Id.* The question presented by such a motion is whether the well-pleaded facts, and all reasonable inferences that may be drawn therefrom, when taken as true and in a light most favorable to the plaintiff, sufficiently state a cause of action upon which relief can be granted. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Thus, a cause of action should not be dismissed on the pleadings unless it is clearly apparent no set of facts can be proven that would entitle the plaintiff to recover. *Id.*

However, Illinois is a fact-pleading jurisdiction. *Id.* While this does not require the plaintiff to set forth evidence in the complaint, it does demand the plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* at 499–500. A plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enters. v. Cty. of Cook*, 232 Ill. 2d 463, 473 (2009).

A Section 2-619 motion affords a "'means of obtaining . . . a summary disposition of issues of law or of easily proved issues of fact.'" *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 120 (2008) (*quoting Kedzie & 103rd Currency Exch. v. Hodge*, 156 Ill. 2d 112, 115 (1993)). Under

this section, a motion to dismiss admits the legal sufficiency of the complaint, but it raises any of nine enumerated defenses which act to defeat the action. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (1st Dist. 2000); *Jones v. Lazerson*, 203 Ill. App. 3d 829, 835 (5th Dist. 1990).

In ruling on a Section 2-619 motion, the court must interpret "all pleadings and supporting documents in the light most favorable to the nonmoving party." *Hubble v. Bi-State Dev. Agency*, 238 Ill. 2d 262, 267 (2010); *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). If the grounds for dismissal or the elements of the defense do not appear on the face of the complaint, the party seeking dismissal must file an affidavit in support of the motion. *Jordan v. Knafel*, 355 Ill. App. 3d 534, 544 (1st Dist. 2005). If facts set forth in an affidavit supporting a motion to dismiss are not contradicted by a counter-affidavit, they will be taken as true "notwithstanding contrary unsupported allegations in the Petitioner's pleadings." *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 907 (1st Dist. 1996). While Section 2-619 allows for the dismissal of a complaint on the basis of issues of law or easily proved issues of fact, disputed questions of fact are reserved for trial proceedings, if necessary. *Advocate Health & Hosps. Corp. v. Bank One, N.A.*, 348 Ill. App 3d 755, 759 (1st Dist. 2004).

## III. DISCUSSION

### A. Count I: Violations of the Biometric Information Privacy Act

In 2008, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"), to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). "Biometric identifier" includes "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. "Biometric information" means "any information, regardless of how it is captured,

5

**A95**

FILED DATE: 1/27/2020 4:52 PM   2019CH03522

FILED DATE: 1/27/2020 4:52 PM    2019CH03522

converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

Section 15 of BIPA imposes on private entities, like Defendant, obligations regarding the collection, retention, disclosure, and destruction of biometric identifiers and biometric information, including (i) obtaining consent from individuals if the company intends to collect, store, or disclose their personal biometric identifiers, (ii) inform the individuals in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used, (iii) destroying biometric identifiers in a timely manner, and (iv) securely storing biometric identifiers. *Id.* § 15. The Act provides a private right of action that permits a prevailing party to recover damages of $1,000 (or actual damages if greater) for negligent violation of the Act and $5,000 (or actual damages if greater) for intentional or reckless violations, attorneys' fees, costs, and expenses, and injunctive relief, if appropriate. *Id.* § 20.

The Act, however, does not expressly provide for a statute of limitations. Here, Defendant argues that the one-year statute of limitations for invasion of privacy claims should apply to BIPA "because it is a privacy statute that attempts to regulate the disclosure or potential disclosure of biometric information." (MTD, at 3.) Section 13-201 of the Code provides, "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201. Plaintiff argues that Section 13-201 applies only to privacy claims involving a publication element.

Statutes of limitation "discourage the presentation of stale claims and . . . encourage diligence in the bringing of actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 265–66 (2001). They "represent society's recognition that predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice." *Id.* at 266. The Illinois

6

A96

Supreme Court has held that "'[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action.'" *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008) (quoting *Armstrong v. Guigler*, 174 Ill. 2d 281, 286 (1996)). It is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply. *Travelers*, 229 Ill. 2d at 466. "To determine the true character of a plaintiff's cause of action . . . '[t]he focus of the inquiry is on the nature of the liability and not on the nature of the relief sought.'" *Id.* at 467 (quoting *Armstrong*, 174 Ill. 2d at 291).

Section 20 of BIPA grants any person aggrieved by a violation of BIPA a right of action. 740 ILCS 14/20. The true nature of any potential liability, then, stems from alleged violations of the BIPA statute. While Plaintiff alleges that his privacy rights were violated, this is clearly an action for a violation of the BIPA statute and not an action for slander, libel, or for the publication of matter violating the right to privacy. *Travelers*, 229 Ill. 2d at 466; 735 ILCS 5/13-201. Even assuming *arguendo* that Section 20 of BIPA created an action for violating a right of privacy in one's biometric data, the plain and unambiguous language of Section 13-201 makes it clear that it applies to actions for *publication* of matter violating the right of privacy. 735 ILCS 5/13-201. Publication is not a necessary element for a person to be aggrieved by a violation of BIPA. 740 ILCS 14/20. True, sections 15(d) and (e) require some form of disclosure or "publication" to establish a violation. But no such disclosure or "publication" is required to state a claim under sections 15(a) and (b). That BIPA protects privacy rights does not bring it within the confines of the one-year statute of limitations period that applies only when information is "published," and Defendants have not cited any legal authority to justify the application of Section 13-201 to alleged violations of these other sections of BIPA. Moreover, different statutes of limitations for different

7

FILED DATE: 1/27/2020 4:52 PM     2019CH03522

sections of BIPA would lead to absurd results. Section 13-201 does not apply to Plaintiff's BIPA claim.

Although not argued for by Defendant, the Court also finds that the two-year statute of limitations set forth in Section 13-202 does not apply to BIPA claims. Section 13-202 provides that "Actions for . . . a statutory penalty . . . shall be commenced within 2 years next after the cause of action accrued . . . ." 735 ILCS 5/13-202. A statutory penalty is penal in nature if it "(1) impose[s] automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff." *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 13 (2009) (citation omitted).

Here, it is clear that BIPA is a remedial statute, not a penal statute. Section 20 of BIPA does not impose damages without regard to the actual damages suffered by a plaintiff because it allows a plaintiff to recover the greater of his actual damages or the applicable liquidated damages amount. 740 ILCS 14/20. The fact that a plaintiff may be awarded or seeks only liquidated damages does not mean Section 20 is penal in nature.

The Court finds the Illinois Supreme Court's decision in *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, instructive. There, the court analyzed whether the federal Telephone Consumer Protection Act ("TCPA") was remedial or penal. The TCPA allows for private lawsuits and provides fixed statutory damages: a person can bring "an action to recover for actual monetary loss from . . . a violation, or to receive $500 in damages for each such violation, whichever is greater . . . [and] [i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times [that] amount . . . ." *Standard Mutual*, 2013 IL 114617, ¶ 29 (quoting 47 U.S.C. § 227(b)(3)). In holding that the

8

A98

"manifest purpose of the TCPA is remedial and not penal," the court made three key observations: (1) Congress enacted the TCPA to address a societal concern—telemarketing abuses; (2) Congress intended the liquidated damages available under the TCPA to be, at least in part, an incentive for private parties to enforce the statute; and (3) by providing for treble damages separate from the $500 liquidated damages, Congress indicated that the liquidated damages served additional goals than deterrence and punishment and were not designed to be punitive damages. *Standard Mutual*, 2013 IL 114617, ¶¶ 31–33.

Like the TCPA, BIPA is clearly "within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good or cure public evils." *Standard Mutual*, 2013 IL 114617, ¶ 31. Indeed, the Illinois legislature enacted BIPA because it determined that "public welfare, security, and safety [would] be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA's procedural protections are "particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers – identifiers that cannot be changed if compromised or misused." *Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018). When a private entity disregards BIPA's procedures, "the right of the individual to maintain her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." *Id.* Thus, by allowing private entities to face liability for violating BIPA, without requiring an individual to show more than a violation of their statutory rights, "those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37. Whether Section 20's liquidated damages provisions are viewed "as a liquidated sum for actual harm, or as an

9

FILED DATE: 1/27/2020 4:52 PM    2019CH03522

FILED DATE: 1/27/2020 4:52 PM    2019CH03522

incentive for aggrieved parties to enforce the statute, or both, the [liquidated damages] amount clearly serves more than purely punitive or deterrent goals." *Standard Mutual*, 2013 IL 114617, ¶ 32. Section 13-202 does not apply to Plaintiff's BIPA claims.

Section 13-205 of the Code states, "[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205. Because Section 20 does not contain a limiting provision and neither Section 13-201 nor Section 13-202 applies, the Court finds that Section 13-205 provides the applicable statute of limitations for Section 20: five years. *See, e.g.*, *Motague v. George J. London Mem'l Hosp.*, 78 Ill. App. 3d 298, 304 (1st Dist. 1979) (recognizing the general rule that a statutory right of action is a "civil action not otherwise provided for"); *People ex rel. Powles v. Alexander Cty.*, 310 Ill. App. 3d 602, 604 (4th Dist. 1941) ("It has been held that where liability results from a statute, an action to enforce such liability is a 'civil action not otherwise provided for'").

Finally, whether Plaintiff's claims are barred by the five-year statute of limitations involves disputed factual issues that cannot be resolved at this stage of the litigation. For example, Plaintiff alleges that his biometric data was collected and stored during his onboarding process as well as each time he clocked in or out. It is Plaintiff's position that "each instance in which Defendant collected, stored, used, or otherwise obtained" Plaintiff's or the Class' biometric data as described in the complaint constitutes a separate BIPA violation. Defendant, on the other hand, contends that the alleged collection and storage of Plaintiff's biometric data, and the alleged failure to properly warn him about it, occurred when Plaintiff began working for Defendant, in June of 2012. It is also unclear from Plaintiff's Complaint when Defendant disclosed Plaintiffs' and the Class' biometric identifiers and biometric information to a third-party vendor. More information is

10

**A100**

required before these disputed factual issues can be resolved. Defendant's Motion to Dismiss pursuant to Section 2-619 is denied.

**B.    Count II (Negligence)**

Count II of Plaintiff's Complaint is a claim for negligence wherein he alleges that Defendant was negligent in its care, collection and use of Plaintiff's biometric data. Without further explication, Defendant argues that Count II should be dismissed "for the same reasons that Count I fails." (MTD, at 8.) In its Reply, Defendant additionally states, "[f]or the same reasons explained in this brief why the exception to the one year statute of limitations for privacy claims—intrusion upon seclusion—is not present here, the negligence claim's similarly fail." (MTD Reply, at 13.) "Indeed," Defendant asserts, "[Plaintiff] cannot simultaneously assert the intentional tort of intrusion upon seclusion and negligence." (*Id.*) This argument is nonsensical. In Count I, Plaintiff is not asserting a claim for intrusion upon seclusion, he is asserting a claim under BIPA. In any event, the Court need not "speculate as to the details of [an] unexplained argument." *Johnson v. Bellwood Sch. Dist. 88*, 2016 U.S. Dist. LEXIS 82866 (N.D. Ill. June 27, 2016). It also declines to conduct legal research in an effort to locate support (to the extent it might exist) for unsupported legal contentions. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (N.D. Ill. 2011) (a court is not "obliged to research and construct legal arguments for parties.").

Defendant also contends that Count II should be dismissed because it is duplicative of Count I. Plaintiff responds the negligence claim contains allegations that Defendant failed to comply with a duty of reasonable care, as well as a heightened duty of are created by the relationship between the parties, owed to Plaintiff, which is not a required element of BIPA.

To state a cause of action for negligence, a plaintiff must adequately plead: (1) the existence of a duty; (2) a breach of that duty; and (3) the breach caused injury to the plaintiff. *Cooney v.*

11

FILED DATE: 1/27/2020 4:52 PM    2019CH03522

*Chi. Pub. Schools*, 407 Ill. App. 3d 358, 361 (1st Dist. 2010). Plaintiff has alleged Defendant has breached its duty under BIPA to exercise reasonable care in the collection and use of his biometric data by, *inter alia*, "failing to implement reasonable procedural safeguards around the collection and use of" Plaintiff's biometric data. (Complaint, ¶ 49.)

In *Dixon v. Washington & Jane Smith Cmty.*, a federal district court denied a motion to dismiss the plaintiff's negligence claim, finding that the plaintiff had sufficiently stated a cause of action for negligence in addition to a BIPA claim by alleging that the defendants had "breached their duty under BIPA to exercise reasonable care in the collection and use of her biometric data 'by failing to implement reasonable procedural safeguards around the collection and use of . . . [her] biometric identifiers and biometric information.'" 2018 U.S. Dist. LEXIS 90344, *44 (N.D. Ill. May 31, 2018). The plaintiff further alleged that this breach proximately caused a violation of her privacy rights, which the court concluded was "a concrete and actual injury." *Id.* The plaintiff, therefore, had "alleged all the elements of a common law negligence claim: the existence of a statutorily-created duty, a breach of that duty, and an actual injury that was proximately caused by that breach." *Id.*

The *Dixon* court, however, did not address whether the plaintiff's negligence claim was duplicative of her BIPA claim. Here, it is clear from Plaintiff's allegations that his negligence cause of action is founded upon the same facts as his BIPA claim. The allegations in Count II are duplicative of Plaintiff's BIPA allegations and do not arise from any negligent conduct or actions that are independent of Defendant's purported BIPA violations. Additionally, Plaintiff does not plead Count II in the alternative. Simply put, Plaintiff is attempting to recast a claim for a statutory violation as a negligence claim. Because Plaintiff's claim of negligence is inextricably linked to his BIPA claim such that there are no allegations supporting an independent basis for a negligence

12

FILED DATE: 1/27/2020 4:52 PM    2019CH03522

cause of action apart from the BIPA violations themselves, Count II is merely duplicative of Count

I and must be dismissed. *See, e.g., DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795–96 (N.D. Ill. 2010)

(collecting cases applying the "well-settled" principle "that duplicative counts in a complaint may

be properly dismissed"); *Neade v. Portes*, 193 Ill. 2d 433, 445 (2000) ("While pleading in the

alternative is generally permitted . . . duplicate claims are not permitted in the same complaint.")

(citation omitted). Count II of Plaintiff's Complaint is dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to 735 ILCS 5/2-619 is DENIED;

(2) Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to 735 ILCS 5/2-615 is GRANTED. Count II of Plaintiff's Complaint is dismissed without prejudice;

(3) Plaintiff shall file his First Amended Complaint within twenty-eight (28) days, should he choose to do so;

(4) This matter is set for a status hearing on ___10/16/19___ at 10:00 AM in Courtroom 2403.

ENTERED:

**ENTERED**
JUDGE MOSHE JACOBIUS-1556
SEP 1 1 2019
CLERK OF THE CIRCUIT COURT
DOROTHY BROWN
OF COOK COUNTY, IL
DEPUTY CLERK

Judge Moshe Jacobius        No. 1556

13

**A103**